[Nos. 13799 and 13800.   In Bank. — May 21, 1891.]

ARETTA CHITTENDEN, APPELLANT, *v.* J. D. PRATT, RESPONDENT, AND ARETTA CHITTENDEN, APPEL-LANT, *v.* ALEXANDER B. McRAE, RESPONDENT.

MORTGAGE OF CROPS — NOTICE TO PURCHASERS — TITLE OF MORTGAGEE — REMOVAL OF CROPS — CONVERSION — ASSUMPSIT. — Where a mortgage of crops is duly executed and recorded, subsequent purchasers are charged with notice that the legal title is in the mortgagee, and that a wrongful removal of the property from the land could not divest the mortgagee of the lien of the mortgage; and the removal of such crops by a purchaser without payment of the mortgage lien is a conversion of the crops, for which the mortgagee has a right of action to recover their value in an action of *assumpsit.*

ID. — SALE TO CREDITORS OF MORTGAGOR — NOTICE TO PAY MORTGAGE — CONSENT OF MORTGAGEE TO SALE — WAIVER OF LIEN — ESTOPPEL. — Where a mortgagor of crops purchased certain articles of third parties, who had actual notice of the mortgage, and promsied to pay therefor in the crops, but before the crops were removed a bank which held the mortgage as collateral security wrote to the purchasers at the mortgagor's request, notifying them of the mortgage, and that they would be held responsible if the mortgage was not paid before they settled with the mortgagor, whereupon the mortgagor informed the mortgagee that he had sold the crop at a good price, and would hold him to the same price if the sale was stopped, the fact that the mortgagee afterward wrote to the mortgagor, telling him to hold the purchasers of the crop to their agreement, and that no one had done anything to interfere with the sale, does not waive the lien, or estop the mortgagee from claiming the value of the crops sold from the purchasers.

ASSUMPSIT — CONVERSION OF PERSONAL PROPERTY — WAIVER OF TORT. — Where one person converts to his own use the personal property of another, the latter may waive the tort, and sue in *assumpsit* for the value thereof.

APPEALS from orders of the Superior Court of Placer County denying new trials.

The facts are stated in the opinion of the court.

*Clinton L. White,* and *Johnson, Johnson & Johnson,* for Appellants.

By the terms of a chattel mortgage the legal title to the mortgaged property passes to the mortgagee. (*Heyland* v. *Badger,* 35 Cal. 404; *Wright* v. *Ross,* 36 Cal. 414; *Conard* v. *Ins. Co.,* 1 Pet. 449; 3 Am. & Eng. Ency. of Law, 176; *Berson* v. *Nunan,* 63 Cal. 550.) A mortgagee may maintain *assumpsit* for the amount of his debt upon a wrongful seizure. (*Wood* v. *Franks,* 56 Cal. 217; Civ. Code, secs. 1427, 1428, 3333.) The mortgagee may maintain replevin or trover, irrespective of the possession of the property. (*Berson* v. *Nunan,* 63 Cal. 550; *Wilson* v. *Prouty,* 70 Cal. 196; Jones on Chattel Mortgages, secs. 445, 490; *Tallman* v. *Jones,* 13 Kan. 438.) The lien of a chattel mortgage is not lost in consequence of the removal of the crop by a third person. (*Martin* v. *Thompson,* 63 Cal. 4; *Wilson* v. *Prouty,* 70 Cal. 196; *Tallman* v. *Jones,* 13 Kan. 438.) Messrs. Pratt and McRae, creditors though they were, could not have attached this crop without first paying the amount of the mortgage debt to plaintiff. (See *Rider* v. *Edgar,* 54 Cal. 127; *Wood* v. *Franks,* 56 Cal. 217; Civ. Code, secs. 2968, 2969.) Though a mortgagor of chattels has such an interest in the property that he may sell and deliver the mortgaged goods, yet any interest thus acquired by the purchaser is subject to the mortgage. (3 Am. & Eng. Ency. of Law, 189, and cases cited.) The mortgagee's interest in mortgaged chattels is such that any appropriate action may be maintained by him against the mortgagor or his alienee. (3 Am. & Eng. Ency. of Law, 202, 203; *Russell* v. *Butterfield,* 21 Wend. 300; *Adams* v. *Wildes,* 107 Mass. 123; *Bellune* v. *Wallace,* 2 Rich. 80.)

*S. Solon Holl, Taylor & Holl,* and *John M. Fulweiler,* for Respondents.

Each cause of action in each complaint attempts to state a cause of action upon a direct contract, — a delivery of the goods and a promise to pay for them, — and inasmuch as it is not pretended that there is any evidence showing any promise, agreement, or contract relation between the defendants and the plaintiff, it seems that the cases must end right here. For the plaintiff must prove his contract substantially as alleged, or fail. (*Evans* v. *Bailey,* 66 Cal. 112; *Whitney* v. *Purrington,* 59 Cal. 36; *Johnson* v. *Moss,* 45 Cal. 515; *Tomlinson* v. *Monroe,* 41 Cal. 94; *Stout* v. *Coffin,* 28 Cal. 65.) This, of course, is not a case of variance, but presents a case, under section 471 of the Code of Civil Procedure, of failure of proof. (*Hackett* v. *California Bank,* 57 Cal. 335.) If, however, the case be considered on its merits, the finding of the court, that the property was delivered by Foster to the defendants by and with the consent of the plaintiff, being fully sustained by the evidence, is conclusive of the case.

Paterson, J. — Both of these cases present the same issues, were heard on the same evidence, and have been brought here on appeal in one transcript.

In 1885 plaintiff leased to William Foster certain lands for the cropping season of 1885–86, and took from him a mortgage on the growing crop to secure the payment of the rent. By the terms of the mortgage the plaintiff " had the right to enter upon the leased premises, and to cut and harvest said crop, thrash, sack, remove, and sell the same, and out of the proceeds of such sale to retain, first, all cost and expenses incurred in cutting, harvesting, thrashing, sacking, removing, and selling said crop, and, also, to retain out of such proceeds the principal and interest secured by said chattel mortgage."

The mortgage was duly executed and recorded, and

defendants had actual notice of its existence. After the execution and recordation of the mortgage, and before the crop was harvested, Foster purchased certain articles of personal property from each of the defendants, and promised to pay for the same in hay at ten dollars per ton. When the crop was ready for harvesting, the plaintiff did not avail himself of the privilege set forth above, but permitted Foster to harvest the crop and prepare it for market. The defendant McRae received from Foster 90,225 pounds of hay, and defendant Pratt received hay amounting in value, at ten dollars per ton, to $319.32; but the amount due each defendant from Foster was greater than the value of the hay each received at ten dollars per ton. On June 14, 1886, the California State Bank held the note and mortgage as collateral security, and at the request of plaintiff, who had heard that Foster intended to sell some of the hay to the defendants, sent a letter to each of the defendants, which was received on the following day, a copy of which follows:—

"*Dear Sir,*— We hold a crop mortgage of Mr. Wm. Foster to Aretta Chittenden, on the crop raised on the Mrs. Chittenden ranch, to secure the payment of a note for twelve hundred and ninety dollars ($1,290), and interest. We understand that you have bought a part of the hay; hence, before you settle with Mr. Foster for the same, you will do well to satisfy yourself that the mortgage above spoken of has been paid; otherwise we shall hold you responsible.

"Yours truly,        CALIFORNIA STATE BANK."

One of the defendants showed the letter he had received to Foster, whereupon the latter wrote to plaintiff, as follows:—

"ROSEVILLE, June 18, 1886.

"MR. CHITTENDEN.

"*Sir,*—I write to you to inform you that the bank has notified Mr. Pratt and Mr. McRae that they must not buy anything off the ranch.

" I sold that hay for ten dollars ($10) per ton. Now, they can take that hay for the same price. You or them have spoilt my sale, so either you or them must take that hay for the same price, and take it right away; for the hay is baled now, and the sun is bleaching it out, and the hay was sold on the ranch.

"Please let the bank know, for the hay must be moved; and if not, either you or them will have to pay me damages. Respectfully, WM. FOSTER."

The plaintiff, through her agent, replied, saying: —

" SACRAMENTO, June 21, 1886.

" FRIEND FOSTER,— I have just returned from the ranch. On my return found a letter from you. If I had received it before, would have come and seen you. I will be up again in about a week. You say in your letter that the bank had notified Pratt and McRae that they must not buy anything from the ranch. That is not so. I have just come from the bank, and saw a copy of the letter to them. They always reserve a copy of all they do. It is simply this: they wrote them they held a crop mortgage of $1,290 and interest on the crop. If you go to Pratt and McRae and ask to see the letter, you will find that this is all there is about it. You have made a good sale of the hay, and probably they would like to crawl out of it if you were foolish enough to let them. You said you had it in black and white with them, and if so, you will hold them to the bargain. No one has done anything to interfere with your deal.

" Yours respectfully, W. A. CHITTENDEN."

All of the hay taken by the defendants was part of the mortgaged crop. Foster has paid $673 on the note made by him to plaintiff, and the balance is now due. The correspondence referred to all occurred before any of the hay was removed from the ranch. The defendants credited the account of Foster with the amount each had received from him, and refused to account to

plaintiff for any part of the hay. Plaintiff thereupon commenced this action to recover the value of the hay. The court below held that the plaintiff was estopped by her letter of June 21, 1886, to Foster, from claiming anything; that she therein authorized Foster to make the sale on his own account, and waived any claim she might otherwise have asserted under the mortgage. And such is the contention of respondents here.

The defendants were charged with notice that the legal title to the hay was in the plaintiff (*Berson* v. *Nunan,* 63 Cal. 550), and that she could not be divested of her lien through a wrongful removal of the property from the land. (*Wilson* v. *Prouty,* 70 Cal. 196; *Martin* v. *Thompson,* 63 Cal. 4.) The defendants, as creditors of Foster, could not have taken the mortgaged property under an attachment, without first paying or tendering to plaintiff the amount of the mortgage debt (*Wood* v. *Franks,* 56 Cal. 217); and as the lien continued, the taking by defendants was a conversion for which plaintiff has a right of action, unless she is estopped by the letter referred to. (*Wilson* v. *Prouty,* 70 Cal. 196.)

We are unable to give to the letters and acts of the parties the effect which was given to them by the court below. The defendants were notified that if they took the hay they would have to see that the mortgage debt was paid by Foster, or they would be held responsible. The letter of June 21st does not relieve them from this responsibility. The plaintiff evidently considered that the sale to defendants would be an advantageous one to all parties; she would receive the amount due her, and at the same time the mortgagor would obtain a good price for the property, and be enabled thereby to reduce his indebtedness. She did not desire to interfere with the sale, but she did nothing that was inconsistent with her rights, or which tends to show that she intended to waive her right, as mortgagee, or to induce a change of position on the part of the defendants. Foster had writ-

ten that "the bank has notified Mr. Pratt and Mr. McRae that they must not buy anything off the ranch." This was evidently a misapprehension of the terms of the letter which had been written by the bank, and the plaintiff proceeded, in her letter of June 21st, to correct his error. There is nothing in her letter indicating an intention on her part of permitting the defendants to appropriate her crop without paying the mortgage debt.

There is no merit in the other contention of the respondents. It is not a case of variance, nor was there a failure of proof. It is well settled in cases of this kind that a party may waive the tort, and sue in *assumpsit* for the value of the property. (*Lehmann* v. *Schmidt,* 87 Cal. 15.)

No doubt respondents acted in the utmost good faith, and in the belief that they were entitled to the property under the circumstances; but plaintiff cannot be deprived of her property through a mistake of the defendants.

The judgment and order in each case are reversed, and the causes are remanded for new trials.

HARRISON, J., DE HAVEN, J., GAROUTTE, J., and McFARLAND, J., concurred.