[Sac. No. 229.   Department Two.—June 24, 1897.]

# BANK OF WOODLAND, APPELLANT, v. B. F. DUNCAN, RESPONDENT.

CHATTEL MORTGAGE—TRANSFER AS COLLATERAL SECURITY—INDORSEMENT OF NOTES—DELIVERY.—The indorsement of notes secured by chattel mortgages, and the delivery thereof together with the mortgages to the indorsee, as collateral security, without any formal assignment of the mortgages, passes the mortgages with the notes as valid collateral, and the indorsee becomes vested *quoad hoc*, with the rights of the mortgagee.

ID.—MORTGAGE UPON CROPS—ORAL AGREEMENT OF MORTGAGEE TO MAKE ADVANCES—INDEPENDENT CONTRACT—RETENTION OF PART OF CROP BY MORTGAGOR—RIGHTS OF PLEDGEE OF MORTGAGE—REPLEVIN.—An oral agreement made by a chattel mortgagee of crops to make future advances for the use of the mortgagor in harvesting the crops, is a contract independent of the mortgage security, which can only be enforced against the mortgagee; and the pledgee of the mortgage, by the terms of which the mortgagee is entitled to the immediate possession of the crop, when harvested, may maintain replevin for such portion of the crop as the mortgagor may have retained to reimburse himself under the oral agreement with the mortgagee.

ID.—CONTRACT IN MORTGAGE FOR POSSESSION—EFFECT OF REMOVAL OF CROP—ESTOPPEL OF MORTGAGOR.—The statute allows the insertion of a contract in a chattel mortgage for possession of the mortgaged property; and when such provision is inserted in a mortgage of a crop, the mortgagor's tortious removal of the crop from the mortgaged premises when harvested, cannot destroy the right of possession of the holder of the mortgage; nor can the mortgagor then take advantage of his own wrong to defeat the lien of the mortgage.

ID.—REPLEVIN BY PLEDGEE—REASSIGNMENT TO MORTGAGEE BEFORE TRIAL—CAUSE OF ACTION RESERVED.—Where an action of replevin of part of a harvested crop was bought by a pledgee, the fact that the notes were reassigned to the mortgagee before the trial constitutes no defense to the action, where it appears that the proceeds of plaintiff's sale of the replevined wheat were credited to the mortgagee, and that the cause of action for the injury on which the suit was founded did not pass to the mortgagee, but was reserved to the plaintiff.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. W. H. GRANT, Judge.

The facts are stated in the opinion.

*Craig & Hawkins*, and *R. L. Simpson*, for Appellant.

*E. R. Bush*, and *E. E. Gaddis*, for Respondent.

BRITT, C.—Replevin for four hundred and fifty sacks of wheat, part of the crop grown during the cropping season of 1892–93 by J. R. and B. F. Davisson on certain large tracts of land farmed by them as copartners in Yolo county.   Said copartners made two negotiable promissory notes in favor of one Wolf Levy, the first dated November 9, 1892, for the sum of $4500, and the second dated April 5, 1893, for $2958.78, each payable with interest one month from its date, and each secured by a separate mortgage executed by the Davissons upon their said crop growing and to be grown.   It was provided in each mortgage that the mortgagors would care for and protect the mortgaged crop while growing and until fit for harvest, and then faithfully harvest, thresh sack, and deliver the same immediately into the possession of said Levy or his assigns, to be held and disposed of for the payment of the debt secured thereby; that in case of the default of the mortgagors in any of those particulars the mortgagee or his assigns might protect, harvest, etc., the crop, and the expenses incurred in that behalf should be secured by the mortgage and be first payable from the proceeds of sale; that the mortgagee or his assigns should upon the harvesting of the crop be entitled to the immediate possession thereof and to haul and store and sell the same, applying the net proceeds to the payment of the note secured by the mortgage, and rendering the overplus, if any, to the mortgagors.   Both mortgages were duly recorded.   The consideration was prior indebtedness of the Davissons to Levy at the date of the notes respectively.   Levy in turn was indebted to the Bank of Woodland, plaintiff here, in a large amount, and forthwith after the receipt of each of said notes and before the maturity thereof he indorsed and delivered the same together with the mortgage by which it was secured to the plaintiff as collateral for his indebtedness to the latter.   There was no formal assignment of the mortgages apart from the indorsement and delivery of the notes.   Concurrently with the execution of the mortgages Levy orally agreed with the

Davissons that he would advance to them money "upon the security of the mortgages" for the purpose of harvesting their crops, and threshing, sacking, and otherwise protecting the same; and it had been his custom to make to them advances for similar purposes during a series of six or eight years before the transactions here in question. In June and July, 1893, Duncan, the defendant, under employment of the Davissons, headed part of the crop, for which service they became indebted to him in the sum of $590.00; they gave him an order for this sum on Levy, who refused payment, though it seems that previous to this time—the close of July, 1893—he had honored some similar demands of the Davissons; thereupon the Davissons directed defendant to take from the grain—which had then been threshed and sacked but was yet lying in the fields where it was grown—enough to secure his said account; accordingly he removed the wheat for which he is now sued; it was not taken from that part of the crop headed by him. Defendant took the wheat against the protest of plaintiff's agents; plaintiff was asserting claim to it and was itself preparing to remove the same; whether it had acquired actual possession is a disputed point, but not important to be decided. Upon the commencement of the action plaintiff obtained possession of the wheat by process of claim and delivery, and before the trial sold the same together with the rest of the crop, credited the proceeds on the notes and also to Levy's account, and reindorsed the notes to Levy without recourse—there being a balance unpaid on them. Defendant pleaded the facts of such sale and retransfer by way of supplemental answer. He also filed a cross-complaint asserting his right to possession of the wheat in controversy, and that plaintiff wrongfully took the same, to his damage to the amount of his account against the Davissons, for which he prayed judgment. The judgment was that plaintiff take nothing and that defendant recover as prayed in his cross-complaint.

We cannot assent to the theory advanced by respond-

ent that the indorsement of the notes and delivery thereof with the mortgages by Levy to the bank, was but an attempt to create a new mortgage and abortive for want of conformity with the statutory requirements concerning the execution of chattel mortgages; on the contrary, the mortgages passed with the notes as valid collateral to the bank, which thus became vested *quoad hoc* with the rights of the mortgagee. (*Adler* v. *Sargent*, 109 Cal. 42; *McArthur* v. *Magee*, 114 Cal. 126, 130.)

Whether the bank, under the circumstances in proof, as indorsee in due course of the notes, obtained a title free of any equities in favor of the makers against Levy, and whether the mortgages partook in this respect of the negotiable quality of the notes, are questions argued by counsel, but which are not necessarily involved in the case. Aside from any difficulty of making the mortgages stand good for advances under the oral agreement (Civ. Code, sec. 2922), it is evident that the covenants of the Davissons contained in the notes and mortgages, and the promise of Levy expressed orally to make future advances for the use of the Davissons, were in nowise dependent. The sums promised to be paid by the Davissons were due in one month from the date of the notes, respectively; long before any advance could be required for harvesting the crop; and the consideration for their promises had accrued to the mortgagors prior to the execution of the papers. Therefore, Levy's refusal to pay the mortgagors' order in favor of defendant, though it seems to have been unjust, and may have given them a ground of action against him, was yet the breach of a contract independent of that evidenced by the mortgages, and could not operate to release the lien or nullify the effect of the latter; the mortgagors and the defendant mistook in assuming that it did. This conclusion is illustrated—if, indeed, authority is necessary—by *Courson* v. *Canfield*, 21 N. J. Eq. 92, and accords with the doctrine of *Front Street etc. R. R. Co.* v. *Butler*, 50 Cal. 574; *Deacon* v. *Blodget*, 111 Cal. 416; *Southern Pac. Co.* v. *Allen*, 112 Cal. 455.

It was not essential to the maintenance of the action that plaintiff should be the absolute owner of the wheat; by the terms of the mortgages it was entitled to the immediate possession thereof, and this was sufficient. (*Lazard* v. *Wheeler*, 22 Cal. 139; *Holly* v. *Heiskell*, 112 Cal. 174.) Respondent contends that this clause of the mortgages is inoperative in plaintiff's favor, for the alleged reason, among others assigned, that it is but an agreement for the future pledging of the chattels, and was invalid against third persons until consummated by delivery. The statute, however, allows the insertion of such provision in a mortgage, and we see no ground for denying its effect here. (Civ. Code, sec. 2927.) It is also contended that by defendant's removal of the wheat from the premises where it was grown, plaintiff is precluded from maintaining the action; this because of the language of section 2972 of the Civil Code, that the lien of a mortgage on a growing crop continues after severance "so long as the same remains on the land of the mortgagor." Plaintiff had the right of possession; defendant's act was tortious, and he cannot thus take advantage of his own wrong. (See *Chittenden* v. *Pratt*, 89 Cal. 178, 183, and cases cited.)

The fact that the notes were reassigned to Levy before the trial, is no defense. The injury on which the suit is founded was done to the plaintiff; the proceeds of plaintiff's sale of the wheat were credited on the notes and also to Levy's account; hence, the cause of action did not pass to Levy with the reassignment of the notes, but was reserved to the plaintiff.

Respondent suggests that certain findings made by the court on the averments of his cross-complaint are not assailed in the specifications of insufficiency of evidence annexed to the bill of exceptions; the findings, however, which pertain to the cross-complaint, and affirm defendant's right of possession, are but iterations in different form of other findings adverse to plaintiff's right; these latter are attacked by the specifications, and it was not necessary to repeat objections to meet a repe-

tition of substantially the same conclusions. The judgment and order denying a new trial should be reversed.

HAYNES, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.