## ALFERITZ v. INGALLS.

(Circuit Court, D. Nevada. December 4, 1897.)

### No. 638.

1. CHATTEL MORTGAGE—SUFFICIENCY OF DESCRIPTION.
    A chattel mortgage which states that the mortgagor is a stock raiser of Merced county, Cal., and describes the property mortgaged as "8,000 sheep, and the increase thereof, * * * now in the county of Merced, state of California," in effect states that the sheep were at the time of its execution owned by, and in possession of, the mortgagor, in said county; and such mortgage is not void for uncertainty in description of the property.

2. SAME—MERGER BY TAKING NEW MORTGAGE.
    The taking by the holder of a chattel mortgage of a second mortgage on the same property to secure the same debt and further advances does

not extinguish the first mortgage, where it is not released, and no agreement for its merger is made.

**3. SAME—ENFORCEMENT IN ANOTHER STATE—NECESSITY OF AFFIDAVIT.**
Where a chattel mortgage between residents of California, and on property then in that state, was executed in accordance with the laws of that state, it may be recorded and enforced in Nevada after the removal of the property to that state by the mortgagor, without annexing thereto the affidavit required by the Nevada statute to render valid a mortgage there executed.

**4. SAME—MORTGAGE OF INCREASE—WOOL SHEARED FROM SHEEP.**
A chattel mortgage on "sheep, and the increase thereof," executed in California, where such mortgage is expressly authorized by statute (Civ. Code, § 2955; St. 1893, p. 84), covers the wool thereafter shorn from the sheep, as a part of the increase.

Action by Peter Alferitz against W. A. Ingalls. Tried by the court without a jury.

M. A. Murphy and Lyman I. Mowry, for plaintiff.

P. M. Bowler, for defendant.

HAWLEY, District Judge (orally). This is an action at law, in the nature of replevin, brought by the plaintiff against defendant for the recovery of 92 sacks of wool, or, in case a delivery thereof cannot be had, for the value thereof, and damages for the alleged wrongful taking and withholding thereof. Plaintiff is a resident of the city and county of San Francisco, state of California, and is a partner in the firm of Dellepiani & Co., engaged in the general merchandise business,—especially in the wool commission business. On February 6, 1894, Nicholas Pierre & Co. made, executed, and delivered to plaintiff, for money by him advanced, a promissory note in the sum of $11,200, payable six months after date, with interest thereon at the rate of 1 per cent. per month from date until paid, and to secure the payment of this note, on the same day, made, executed, and delivered to plaintiff a chattel mortgage upon certain personal property, viz.:

"All that certain personal property situated and described as follows, to wit: 8,000 sheep, and the increase thereof, * * * now in the county of Merced, state of California."

And said mortgage was also to secure such further and future advances, not to exceed $1,500, as said Peter Alferitz might make to said Nicholas Pierre & Co., with interest as specified in the promissory note. This mortgage contained the further covenant:

"That, if the mortgagors shall fail to make any payment as in said promissory note provided, then the mortgagee may take possession of the said property. using all necessary force so to do, and may immediately proceed to sell the same in the manner provided by law, and from the proceeds pay the whole amount in said note and mortgage specified, and all costs of sale, including counsel fees, not exceeding 5 per cent. on the amount due, paying the overplus to the said mortgagors."

The mortgage was duly acknowledged before a proper officer, and annexed thereto is an affidavit duly sworn to by Nicholas Pierre & Co. and Peter Alferitz, to the effect that the mortgage is made in good faith, and without any design to hinder, delay, or defraud creditors, and was duly recorded in the recorder's office of the county

of Merced, in the Book of Chattel Mortgages, on the 6th day of February, 1894, and at different times thereafter recorded in various other counties in the state of California, and on the 14th day of November, 1894, was recorded in the county records of Esmeralda county, state of Nevada, in the Book of Chattel Mortgages. On the 24th of December, 1896, Pierre & Co. executed and delivered to plaintiff a second note, in the sum of $20,000, and a chattel mortgage, to secure the payment of the note, upon "8,350 sheep, and the in-. crease thereof, * * * now in the county of Esmeralda, state of Nevada," which mortgage contains the same provisions, terms, and conditions as the first mortgage. At the time of the execution of the second mortgage, Pierre & Co. were indebted to Dellepiani & Co. in a larger amount of money than was mentioned in the first mortgage, and the second note and mortgage were given for the amount due at the time of its execution, including the amount specified in the, first note and mortgage; the understanding and agreement between the parties being that the first mortgage was not to be released until the second was paid, and then both were to be released at the same time. The defendant is the sheriff of Esmeralda county, and as such levied upon the wool in controversy, as the property of Pierre & Co., by virtue of a writ of attachment in the suit of Alexander Nicholas against Nicholas Pierre & Co., and seeks to justify his seizure of the wool by virtue of the proceedings in said suit. The evidence shows that defendant had knowledge of the existence of the mortgage prior to the levy, and at the time of the levy of the attachment was notified that the wool belonged to Dellepiani & Co. Thereafter due demand was made by plaintiff for the delivery of the property. The case was, by stipulation of counsel, tried before the court without a jury. Upon these facts, and others that will hereafter be noticed, the question arises whether the plaintiff can maintain this action. Several objections were made to the sufficiency of the evidence offered on behalf of the plaintiff, and all those which reach the merits of the case will be specifically noticed.

1. It is claimed on behalf of the defendant that the description contained in the mortgages is fatally defective. The general rule is that the description in a chattel mortgage need not be so specific and certain that the property might be identified by the description alone. If the description of the personal property contained in a chattel mortgage is such as will enable third persons to identify the property, aided by the inquiry which the mortgage itself indicates and directs, the mortgage, when recorded, is constructive notice to all third parties. 5 Am. & Eng. Enc. Law (2d Ed.) 956, and numerous authorities there cited; Jones, Chat. Mortg. §§ 53, 54; McNichols v. Fry, 62 Mo. App. 13, 16; Rawlins v. Kennard, 26 Neb. 181, 41 N. W. 1004; Duke v. Strickland, 43 Ind. 494, 499; Wells v. Wilcox, 68 Iowa, 708, 28 N. W. 29; Brown v. Holmes, 13 Kan. 482, 492; Comins v. Newton, 10 Allen, 518; Kenyon v. Tramel, 71 Iowa, 693, 28 N. W. 37; Scrafford v. Gibbons (Kan. Sup.) 24 Pac. 968. Applying this rule to the facts in this case, I am of .opinion that the description in the mortgages was sufficient to enable third parties to ascertain the identical property mortgaged. The first mortgage declares that

it is made by Nicholas Pierre & Co., of the county of Merced, in the state of California; by occupation, stock raisers. The second mortgage contains the same words, except the substitution of the words "of the county of Esmeralda, state of Nevada." The facts set out in the mortgage, when properly construed, are to the effect that the property specified in the first mortgage was at the time of its execution owned by, and in the possession of, the mortgagors, in Merced county, Cal., and that the second mortgage was upon property then situate in Esmeralda county, Nev., in the possession of, and owned by, the mortgagors. Such descriptions have generally been held sufficient. Corbin v. Kincaid, 33 Kan. 649, 653, 7 Pac. 145; Wells v. Wilcox, supra; Adamson v. Horton, 42 Minn. 161, 43 N. W. 849; Shaffer v. Pickrell, 22 Kan. 619, 623; Crisfield v. Neal, 36 Kan. 278, 281, 13 Pac. 272. In Shaffer v. Pickrell, supra, the description was, "250 stock hogs owned by the said D. B. Mott, in Franklin county, Kansas." The court, after referring to a clause in the mortgage with reference to the default similar to that contained in the present mortgage, said:

"A fair construction of these provisions is that the hogs, at the execution of the chattel mortgage, were owned by D. B. Mott, the mortgagor; that they were then in Franklin county, in this state, and were also in the possession of said Mott, in said county. * * * The suggestion that Mott may have had 500 or 5,000 hogs of the same description in Franklin county, from aught that appears in the mortgage or in the record, is without particular force, as the canon of construction is to solve the doubts, if any exist, in favor, rather than against, the validity of a written instrument; and we have no right to imagine facts to exist in the record to invalidate and destroy the chattel mortgage."

The description directed parties to the situs of the property in Merced and Esmeralda counties at the time of the execution of the mortgages. This directed third parties to the starting point of inquiry. But the large bands of sheep on this coast are not usually kept on any particular farm or range. They are generally driven, as in the present case, from one county to another in the same state, or across the line into another state. In the summer time they are driven into the mountains, grazing upon the public lands, and there herded and kept, and upon the approach of winter are driven back to the valleys. The most the mortgage can do is to direct the attention of the parties to the time and place where the property was at the time of the execution of the mortgage, and it would be their duty, under such circumstances, to ascertain whether the property in the possession of the mortgagor at another place was the same band of sheep that was mortgaged. Any person who read the mortgages in question would naturally have concluded that the property would be, as it was, found in the possession of the mortgagors, and could readily have ascertained, upon inquiry suggested by the records, whether the sheep were of the same band described in the mortgages. As was said in Shellhammer v. Jones, 87 Iowa, 520, 523, 54 N. W. 363, 364, "A reasonably prudent man, who desired to protect himself, would have done so." See, also, Harris v. Kennedy, 48 Wis. 500, 505, 4 N. W. 651. The statute of this state to regulate "marks and brands of stock" (Gen. St. Nev. § 757 et seq.), relied upon by defendant, only applies to "stock

running at large," and provides the means by which the owner can identify his property, as the marks and brands, as recorded, are made prima facie evidence of ownership, and of the right of possession to the animals. Undoubtedly, it would in all cases be safer, better, and clearer if such marks and brands were mentioned in the description given in a chattel mortgage, as it would obviate objections that might otherwise be urged to the validity of the description. But the decisions are universal to the effect that it is not necessary that the description in the mortgage should be such as would enable a stranger to identify the property. In Eddy v. Caldwell, 7 Minn. 225, 231 (Gil. 166), the court, in answering an objection that the description in a mortgage did not describe the property mentioned in the pleadings, said:

"The mortgage purports to convey ten horses in the possession of the party of the first part. It would be impossible to determine, from an inspection of the mortgage itself, whether the property mentioned in the pleadings was the same as that included in the mortgage or not, however minute the description of the property in the mortgage might be, since there might be many other horses of the same description. In probably the great majority of cases of mortgages of personal property, the description cannot be so exact and certain that a person could infallibly determine therefrom that the article in question was covered by the mortgage. Had the mortgage in this case described the property in the same language employed in the complaint, to wit, two long-tailed gray horses, it would still have been necessary to introduce the mortgage in evidence, and prove dehors the instrument that the horses taken by defendant were the same as those mentioned in the mortgage."

In Willey v. Snyder, 34 Mich. 60, Chief Justice Cooley said:

"If a stranger is to be sent out to select property mortgaged, with no other means of identification than such as are afforded by the written description, and without being at liberty to supplement that information by such as can be gained in the mortgagor's neighborhood by inquiry of those who know what property the mortgagor was possessed of which would answer the description in the instrument when it was given, and by possessing himself of such other circumstances as persons usually avail themselves of in applying written descriptions to the things intended, it is much to be feared that the stranger would be so often at fault that chattel mortgages, if their validity depended upon his success in identifying the property, would seldom be of much value as securities. Written descriptions of property are to be interpreted in the light of the facts known to and in the minds of the parties at the time. They are not prepared for strangers, but for those they are to affect,—the parties and their privies. A subsequent purchaser or mortgagor is supposed to acquire a knowledge of all the facts, so far as may be needful to his protection, and he purchases in view of that knowledge."

In addition to the authorities heretofore cited, see Elder v. Miller, 60 Me. 118; Johnson v. Grissard, 51 Ark. 410, 415, 11 S. W. 585.

Descriptions of personal property in a chattel mortgage are not required, of themselves, to fully identify the property. They are required to furnish the means and information by which, upon inquiry, the property can be identified. That is certain which can be made certain by making the inquiry indicated and directed by the mortgage. As was said by the court in Coughran v. Sundback (S. D.) 70 N. W. 644:

"The maxims of jurisprudence that 'All is certain which can be made certain,' and that 'An interpretation which gives effect is preferred to one which makes void,' have been made statutory canons of construction by which to determine the validity of the instrument."

It follows from the views herein expressed that the description given in the mortgages is not void for uncertainty.

2. It is next claimed that the mortgages are invalid because no affidavit is attached thereto as required by the statute of Nevada which reads as follows:

"No such mortgage shall be valid for any purpose as against other than the parties thereto, unless there be appended or annexed thereto the affidavits of the mortgagor and mortgagee, or some person in their behalf, setting forth that the mortgage is made in good faith, and given for a debt actually owing from the mortgagor, stating the amount and character of such debt, and that the same is not made to hinder, delay or defraud any creditor of the mortgagor." St. 1887, p. 66.

The words, "and given for a debt actually owing from the mortgagor, stating the amount and character of such debt," are not included in the California statute. The first mortgage was made, executed, and delivered while the sheep were in the state of California, and the affidavit annexed thereto complied with the laws of that state. Meherin v. Oaks, 67 Cal. 57, 7 Pac. 47. The affidavit in the second mortgage is the same as in the first, but the mortgage states that Pierre & Co. were of the county of Esmeralda, in this state, instead of the "county of Merced, in the state of California," as mentioned in the first mortgage. There are authorities which hold that the recitals in the mortgage may be regarded as evidence of the existence of the debts against subsequent creditors; and it may be that, if such a rule was to be followed, the affidavit in the second mortgage might be held to constitute a substantial compliance with the Nevada statute. Fletcher v. Bonnet, 51 N. J. Eq. 615, 28 Atl. 601; Camden Safe-Deposit & Trust Co. v. Burlington Carpet Co. (N. J. Ch.) 33 Atl. 479, 481. See, also, Petrovitzky v. Brigham (Utah) 47 Pac. 666. But it will be unnecessary to determine whether the affidavit in the second mortgage, if considered as made in this state, complies with the Nevada statute or not, unless the first mortgage was, as is claimed by defendant, merged in the second mortgage, or that it was necessary, upon the recording of the first mortgage in this state, to have annexed to it an affidavit in strict conformity with the laws of this state; for, if the first mortgage is in all respects valid and can be enforced in this state, it is sufficient to entitle plaintiff to recover.

3. Upon the proofs in this case, it clearly appears that the first note and mortgage were not merged in the second. The indebtedness evidenced by the first note, and secured by the first mortgage, was not extinguished. The first note was not paid, nor was the mortgage released, at the time of the giving of the second note and mortgage. On the contrary, the agreement between the parties was that the first note and mortgage should be retained by the mortgagee until the indebtedness from the mortgagor to the plaintiff was fully paid. The law is well settled that a mortgage is not merged by taking a new mortgage upon the same property for the old debt and further advances, or for the old debt and interest accrued upon it, if the old mortgage has not been released, or an agreement made that it should be released. In Gregory v. Thomas, 20 Wend. 17, the court said, in reply to the argument of defendant's counsel that the second mortgage extinguished the first:

"The argument is against all the books, ancient and modern. Adjudications of several centuries upon such cases, of every variety of form, in England, in this state, and in neighboring states, settle the proposition that a subsequent security for a debt, of equal degree with a former, for the same debt, will not, by operation of law, extinguish it."

In, Hill v. Beebe, 13 N. Y. 556, 564, the court said, speaking of the rule announced in Gregory v. Thomas:

"That case contains so thorough an exposition of the doctrine, both upon principle and authority, that it would be useless now to enlarge upon it. The proposition is, indeed, quite elementary, that the mere act of taking a new security from the same party, and upon the same property, does not merge or extinguish a prior one, where both are of the same quality and degree."

To the same effect, see Shuler v. Boutwell, 18 Hun, 171; Griffith v. Grogan, 12 Cal. 317, 323; Crary v. Bowers, 20 Cal. 85, 88; Welch v. Allington, 23 Cal. 322; Jones, Mortg. § 862.

4. The first note and mortgage being properly executed in accordance with the statute of California, where they were made, was it necessary, when the property was brought into Esmeralda county, in this state, to annex to the mortgage an affidavit as required by the laws of this state? This question should, in my opinion, be answered in the negative. In proceedings appertaining to chattel mortgages, the lex fori, or the law of the place where the relief is sought or the action brought, will control as to all questions of form, process, and practice. 4 Enc. Pl. & Prac. 508. But, if the situs of the property at the time the mortgage was given be different from the place of contract, then the lex situs will control upon questions of record and local requisites of a valid mortgage. The mortgagors and mortgagee in the present case were, at the time of the execution of the first note and mortgage, residents of the state of California; and the sheep specified in the mortgage were situate in Merced county, where the mortgage was first recorded. The aid of the court may be invoked, and this law applied, wherever the property may be traced. The fact that the mortgagors were allowed to remain in possession of the sheep, and to bring them into this state, where the mortgage was again recorded, should not affect the mortgagees' rights. Whatever rights the parties had in California were fully perfected, and binding upon third parties as well as between themselves. Rights thus perfected in one state ought to be, and generally are, respected in other states into which the property may thereafter be brought. It cannot consistently be claimed in this case that by the law of this state the retention of the possession of the property by the mortgagors is conclusive evidence that the mortgage is fraudulent, unless a new affidavit in strict compliance with the laws of this state was annexed to the mortgage at the time of its being recorded in Esmeralda county. The law in respect to personal property is, as before stated, that the validity of transfers depends, in general, upon the place where the contract was made. The contract, so far as the evidence in this case goes, appears to have been made in the utmost good faith in California, between citizens of that state, and in relation to property there situate, with no purpose of evading any law of this state. Its validity under the laws of California should be here respected and upheld. It would be a harsh and severe rule to hold that such a mortgage,

valid in California, where executed, should be held invalid in Nevada, in respect to personal property of a migratory character, passing over the line of one state into another. Such contracts, if valid where made, should be held valid here. In Iron Works v. Warren, 76 Ind. 513, it was held that a chattel mortgage executed and recorded in another state, where the parties resided, upon property situate in the state of Indiana, but not there recorded, was invalid, as against attaching creditors; but the court expressly recognized the rule to be that a chattel mortgage executed and recorded in the state where the property is situate will, if valid under the laws of the place of execution, be enforced by the courts of the state into which the property is afterwards brought by the mortgagor, unless there is some statute to the contrary, and numerous authorities are there cited in support of this rule. See, also, 5 Am. & Eng. Enc. Law (2d Ed.) 1011, and authorities there cited; Jones, Chat. Mortg. § 299; Hubbard v. Andrews, 76 Ga. 177; Ferguson v. Clifford, 37 N. H. 86; Ballard v. Winter, 39 Conn. 179; Craig v. Williams, 90 Va. 500, 505, 18 S. E. 899; Bank v. Morris, 114 Mo. 255, 263, 21 S. W. 511; Handley v. Harris, 48 Kan. 606, 29 Pac. 1145; Bank v. Massey, 48 Kan. 762, 30 Pac. 124; Herm. Chat. Mortg. § 79; Riddle v. Hudgins, 7 C. C. A. 335, 58 Fed. 490, 494.

5. Before reaching the main question involved in this case, it is deemed proper briefly to refer to different rules of decisions as to the character of the title acquired by the mortgagee of personal property, as found in California and in other states. In the earlier decisions, as well as in the later ones, which follow the principles of the common law, the rule is that a chattel mortgage is something more than a mere security; that it is a conditional sale of personal property, and operates to transfer the legal title to the mortgagee, which can only be defeated by a full performance of the conditions mentioned in the mortgage. 5 Am. & Eng. Enc. Law (2d Ed.) 947, and numerous authorities there cited; Jones, Chat. Mortg. 1; 1 Jones, Mortg. (4th Ed.) 1, 11; Heyland v. Badger, 35 Cal. 404; Berson v. Nunan, 63 Cal. 550; Chittenden v. Pratt, 89 Cal. 178, 26 Pac. 626; Murray v. Loushman, 47 Neb. 256, 66 N. W. 413; Cahoon v. Miers, 67 Md. 573, 11 Atl. 278; Pyeatt v. Powell, 2 C. C. A. 367, 51 Fed. 551. The decisions rendered under the statutes and registry laws of various states declare the rule to be that the title to personal property in a chattel mortgage remains in the mortgagor until devested by foreclosure and sale; that the mortgage is merely security for the debt, and only creates a lien upon the property. 5 Am. & Eng. Enc. Law, 988; Shoobert v. De Motta, 112 Cal. 215, 44 Pac. 487; Bank v. Erreca, 116 Cal. 81, 47 Pac. 926; Hixon v. Hubbell (Okl.) 44 Pac. 222; Campbell v. Iron Co., 83 Ala. 351, 357, 3 South. 369. If the first rule above stated should be applied, it would end this case in favor of the plaintiff; for, if he is invested with the legal title to the sheep mentioned in the mortgage, he would undoubtedly be entitled to the produce thereof,—to the wool on their backs, and to the wool shorn therefrom. It is earnestly argued by plaintiff that this case should be decided upon the rule announced in Berson v. Nunan, supra, because the mortgage in this case was

executed and delivered when the rule laid down in that case was the law of California, and became a part of the contract in the mortgage; that the rule announced in Berson v. Nunan was approved in Beamer v. Freeman, 84 Cal. 554, 24 Pac. 169; Chittenden v. Pratt, 89 Cal. 178, 26 Pac. 626; Cardenas v. Miller, 108 Cal. 250, 39 Pac. 783, and 41 Pac. 472,—and remained the rule of property in this class of cases up to the time of the decision in Shoobert v. De Motta, supra; that to apply the rule in the latter case would impair the obligation of the contract, under the doctrines announced in the supreme court in several cases, and expressed in Douglas v. County of Pike, 101 U. S. 677, 686, where the court said:

> "As a rule, we treat the construction which the highest court of a state has given a statute of the state as part of the statute, and govern ourselves accordingly; but, where different constructions have been given to the same statute at different times, we have never felt ourselves bound to follow the latest decisions, if thereby contract rights which have accrued under earlier rulings will be injuriously affected. * * * The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same, in its effect on contracts, as an amendment of the law by means of a legislative enactment."

From the views which will be expressed hereafter, it may be conceded, for the purposes of this opinion, that the case of Berson v. Nunan, and the other cases cited, as claimed by defendant's counsel, did not lay down any rule of property, because the question as to the title of property was not necessarily involved therein, and that the rule announced in Shoobert v. De Motta should be followed by this court.

6. This brings us to the vital question involved in this case: Does a chattel mortgage of "sheep, and the increase thereof," cover the wool which is thereafter shorn from the sheep? It was admitted upon the oral argument by the respective counsel that after diligent search they had not been able to find any authorities directly in point upon this subject. The question must therefore be solved by analogy of the principles found in the adjudicated cases, and by the reasons advanced in favor of or against the proposition. With reference to the authorities, it may be stated in the outset that there is nothing in the principles announced in Shoobert v. De Motta and Bank v. Erreca adverse to the proposition that wool would be included in the general term, "sheep, and the increase thereof." In neither of those cases was this question in any manner involved. In the Shoobert Case the controversy was over the lambs. The mortgage was only for "sheep." Now, under the law, the parties might have included "the increase thereof," but they did not do so; and the court, discarding the rule that the title passed to the mortgagee, held that, "in the absence of any express agreement upon the subject, the lien created by a mortgage is limited to the property which is described in the mortgage"; that, inasmuch as the mortgagor retained the possession of the property, he was at liberty to

deal with and use it as its owner; and that whatever income or profit might be derived from such use belongs to him, and not to the mortgagee. Why? Because he had not specified the income or increase of the property in the mortgage. This is made clear by the illustration given in the opinion:

"If, in the case of sheep, the use to which he puts the ewes is for breeding lambs, there can be no sufficient reason given why the lambs that are dropped by the ewes should belong to the mortgagee, any more than the wool which is sheared from their backs."

The lambs and the wool are thus treated as being subject to the same rule. The mortgagor, having limited the lien of the mortgage to sheep, necessarily excluded the "increase thereof"; and hence neither the lambs, nor the wool sheared from the sheep, could be included in the mortgage. But in a case like the present, where the mortgage includes the "sheep, and the increase thereof," is there any sound or sufficient reason why the wool that is sheared from the sheep should not be included in the mortgage, as well as the lambs that are dropped by the ewes? Reference is made in the Shoobert Case to Simpson v. Ferguson, 112 Cal. 180, 40 Pac. 101, and 44 Pac. 484, where the mortgagee, having a real-estate mortgage upon land, with the "rents, issues, and profits thereof," attempted to hold the personal property against a subsequent, properly executed, chattel mortgage of the growing crop of a subsequent year. It was held that this could not be done; the reason given being that a mortgage upon a growing crop must, in order to create a lien thereon, be executed with the formalities prescribed in section 2956 of the Civil Code,—otherwise it is void, as against a subsequent mortgage of the crop in good faith. If the mortgagee in the prior mortgage of the land desired to have a lien on the growing crops, against third parties, he should have included the personal property in a chattel mortgage. In Bank v. Erreca the mortgage, as in the Shoobert Case, was upon sheep only. It involved questions as to the lambs that had been born from the mortgaged sheep subsequent to its execution, and to the wool that had grown upon the sheep described in the mortgage after its execution, and sheared therefrom by the mortgagors. The court held that the lien of the mortgage extended only to the sheep expressly described in the mortgage, and that, the lambs and wool being excluded from the mortgage, the mortgagor might sell and dispose of the same. Let us examine still more closely the reasoning in that case. The court said:

"In Shoobert v. De Motta, 112 Cal. 215, 44 Pac. 487, it was held that in this state the lien of a chattel mortgage upon domestic animals does not cover the increase of the animals, unless expressly mentioned therein. The provision in section 2955 of the Civil Code authorizing the execution of a chattel mortgage upon 'sheep, and the increase thereof' (St. 1893, p. 84), does not extend the lien of a mortgage upon 'sheep' to the 'increase' of the sheep, but implies that, unless the increase is covered by the terms of the mortgage, it is not included therein."

In other words, if the language of the mortgage had been "sheep, and the increase thereof," it would have included the lambs and the wool,—the progeny and product of the sheep. Can any other rational conclusion be drawn from the language used? This conclusion must,

in natural reason, be true, whether any authorities directly in point can be found or not. No authorities to the contrary have been cited. This case does not involve any question as to the lambs, the natural progeny of the sheep, but does directly present the question whether wool is included under the term "sheep, and the increase thereof." The owner of sheep owns all of their products and accessions, as well as all the progeny born from the parent stock. The sheep is the mother of both. Being so the owner, he can create a lien upon the products and progeny as well as the sheep. Was it necessary, in order so to do, to mention the wool grown and growing upon the backs of the sheep, or to be sheared therefrom? Was it not sufficient to use the words of the statute of California, as shown in the decisions, "sheep, and the increase thereof"? Now, if it be true that all things have a potential existence which will come into existence after the contract by mortgage is made, by means of the ordinary and natural operations of nature, does it not follow that the mortgagor can create a lien thereon, when the same is brought forth, by the use of apt words, which in their ordinary and legal significance are sufficient to include the same? What is meant by the words "and the increase thereof"? It is an elementary principle of construction that words used in a statute are to be given their ordinary, general, and unrestricted meaning, unless the context thereof, or the scope and purpose of the statute, clearly indicate that the words are to have a restricted or limited meaning. What is the meaning of the word "increase," as used in the term "sheep, and the increase thereof"? What do the lexicographers say? "Increase." Webster: "That which is added to the original stock by augmentation or growth; produce; profit; interest; progeny; issue; offspring." Century: "The amount or number added to the original stock, or by which the original stock is augmented; increment; profit; interest; produce; issue; offspring." Standard: "(1) Produce, as of crops; (2) increment by generation; progeny; (3) commercial or financial increment; profit; interest." Accepting these definitions of the word "increase" as correct, it necessarily follows that the wool in controversy in this suit, being the natural increase of the sheep, is included in the term "sheep, and the increase thereof."

7. The only other question to be determined is as to the value of the wool at the time and place where it was wrongfully taken by the defendant. From the evidence, I find this value to be $3,542. The damage for the wrongful withholding thereof, there being no evidence as to any special damages, is the legal rate of interest in this state from the date when the property was taken up to the present time. Judgment will be entered in favor of the plaintiff in accordance with the views herein expressed, with costs.