[Civ. No. 183.   Third Appellate District.—April 18, 1906.]

T. L. GATES, Respondent, v. TOM QUONG,, Respondent, and EARL FRUIT COMPANY, Appellant

LEASE OF PRUNE ORCHARD—RIGHT OF LESSOR TO SELL—CROP MORTGAGE BY LESSEE—LEASE MADE PART OF MORTGAGE—LOSS OF LIEN.— Under a lease of a prune orchard giving the lessor the right to remove and sell the crop and pay the rent out of the proceeds, delivering the remainder to the lessee, conceding without deciding that the lessee had a mortgagable interest in the crop, the lien thereof ceased upon the rightful removal and sale of the crop, under the authority of the lease, the provisions of which were made part of the crop mortgage, and were known to the mortgagee.

ID.—EFFECT OF NOTICE OF CROP MORTGAGE ON SALE AND PURCHASE OF CROP.—Actual notice to the lessor of the existence of the crop mortgage could not affect his right to remove and sell the crop; nor could constructive notice of the crop mortgage to the purchaser make the purchase thereof by him tortious.

ID.—CLAIM OF AGREEMENT AND ESTOPPEL NEGATIVED—SUPPORT OF FINDINGS.—Held, that findings negativing the claim of the crop mortgagee that there was an agreement that the remainder of the proceeds of sale should belong to the crop mortgagee, and that there was an estoppel *in pais* against the purchaser and the lessee, were fully sustained by the evidence to the contrary.

ID.—ATTACHMENT OF PROCEEDS DUE TENANT—PREVAILING LIEN.—A creditor of the lessee, who by garnishment attached all of the lessee's interest on the residue of the proceeds of sale of the crop after the crop mortgagee had lost its lien, and was nothing more than a general creditor of the lessee, has a lien thereon which must prevail over any claim of an interest in the residue of such proceeds in favor of such mortgagee as against the lessor as a prior mortgagee.

APPEAL from a judgment of the Superior Court of Solano County.   L. G. Harrier, Judge.

The facts are stated in the opinion of the court.

Chauncey H. Dunn, for Appellant.

E. E. McFarland, for T. F. Gates, Respondent.

Gregory & Gregory, for Tom Quong, Respondent.

CHIPMAN, P. J.—Action in interpleader to determine the right to certain moneys in the hands of plaintiff as the purchase price of certain prunes sold to him.   Defendant Earl Fruit Company claimed the money under a crop mortgage executed to it by one Lee Toy.   Defendant Tom Quong claimed under a garnishment served on plaintiff, issued in a suit against said Toy.

It appears that Toy entered into possession of an orchard tract under an agreement with the owner, one Frank Buck. Toy executed a chattel mortgage on the growing crop to defendant company.   One of the questions arising out of the controversy was whether Toy had any mortgagable interest in the prunes.   Much attention is given in the briefs to this

question, appellant claiming that the agreement possessed all the elements necessary to constitute a leasehold interest in Toy, such as made his share of the prunes grown on the leased premises the subject of chattel mortgage. The court found against the defendant company on this issue, which finding is challenged as unsupported by the evidence. We do not find it necessary to pass upon this question.

The court found "that by the terms of said lease said Buck had the right and was exclusively empowered to sell and deliver to any person or persons he might direct, any and all fruit raised upon said demised premises. . . . That said prunes were sold by said Buck to said Gates 'and' were removed from said leased premises and were delivered to plaintiff. That said Earl Fruit Company did not know of said sale until said delivery was nearly completed. That it then notified said Lee Toy and said T. L. Gates that the proceeds of said sale must be paid to said Earl Fruit Company by virtue of said crop mortgage, but neither said Lee Toy nor said T. L. Gates agreed thereto. That no lien . . . existed upon said prunes or the proceeds of the sale thereof . . . after their removal from said leased premises in favor of said Earl Fruit Company." The court further found "that no person representing the Earl Fruit Company was present at said sale of prunes, and that said Earl Fruit Company had no part nor voice therein and neither consented or objected thereto upon condition that the proceeds should be paid to said company, or by reason of any conditions whatever"; and that neither Buck, nor Toy, nor Gates at any time agreed with one another or with said company "that the purchase price of said lot of prunes should be paid by plaintiff to said Earl Fruit Company, for the purpose of being applied upon said attempted crop mortgage, or for any purpose whatever."

Appellant attacks part of these findings as unsupported by the evidence. The court gave judgment for defendant Tom Quong, from which Earl Fruit Company appeals on bill of exceptions.

Section 2972 of the Civil Code provides as follows: "The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of mortgagor." Without deciding that the mortgage

in this case created any lien on the crop attempted to be mort-gaged, but conceding that it did, the lien ceased upon the removal of the crop from the land on which the crop grew. (Civ. Code, sec. 2972; *Horgan* v. *Zanetta,* 107 Cal. 27, [40 Pac. 22].) The evidence was that the prunes were sold at $11.50 per ton taken from the tree, i. e., undried, and that "nearly all" were picked and delivered to plaintiff at a point away from the demised premises "in town," but what town does not appear. Just what proportion remained undelivered when the agent of the defendant company saw Toy and Gates does not appear. No point is made, however, on this state of the evidence, and both parties seem to treat all the prunes as having been delivered to plaintiff and that the money involved represents the proceeds of all the prunes in question. Appellant's objection to the findings is aimed particularly at that clause to the effect that neither Toy nor Gates agreed, at the time when the delivery of the prunes was nearly completed, "that the proceeds must be paid to the Earl Fruit Company on its crop mortgage." Upon this point the evidence was sufficient to support the findings. Nor do we think that the evidence shows such a state of facts as would give rise to the principle of estoppel *in pais,* for we cannot see that the agent of the company was misled to its injury by anything said or done by either Toy or Gates. There was not only no agreement or consent on their part, according to their testimony, that the proceeds should be applied on the mortgage indebtedness, but there was nothing said or done by them from which the agent of the company could reasonably infer such consent or agreement.

As there was no agreement of this kind there was no evidence supporting appellant's theory that a novation was established; that is, that in lieu of the mortgage lien a new contract was entered into between Toy, Gates and the company's agent. The case of *McIntyre* v. *Hansen,* 131 Cal. 11, [63 Pac. 69], does not seem to us to apply here, for the reason that the court, on sufficient evidence, found that there was no agreement such as appellant relies upon.

Recurring to the assumed lien of the crop mortgage: although it was lost by the severance of the crop and its removal from the demised land, the cases recognize an exception to the rule of the code where there is a tortious removal of

the crops.  Appellant claims that there was such removal here and cites in support of the exception to the rule, *Wilson* v. *Prouty,* 70 Cal. 196, [11 Pac. 608]; *Chittenden* v. *Pratt,* 89 Cal. 178, [26 Pac. 626]; *Bank of Woodland* v. *Duncan,* 117 Cal. 416, [49 Pac. 44].

Aside from the fact that the company never objected to the removal or sale of the prunes, we think the evidence clearly shows authority in Buck to make the sale and a rightful exercise of that authority.  Whatever view may be taken of the agreement between him and Toy, as to the mortgagable interest of Toy, the agreement specifically provided: "That all produce shall be sold by lessor (Buck) or by persons indicated by him, and all returns from sale shall come to lessor and be retained by him until he shall be paid the said rent, . . . the balance, if any, to be paid over to lessee."  Appellant made this agreement a part of its crop mortgage and of course had knowledge of its provisions.  Buck did not have actual notice of the mortgage until after the prunes were delivered and even with  such notice it would not have affected his right to sell the prunes.  Constructive notice of the mortgage by Gates would not make the purchase by him tortious, for the mortgage showed on its face that Buck had the right to sell the fruit. Gates' first actual notice of the mortgage was when the prunes were about all delivered and no attempt was then made by the company, or at any other time, to stop the delivery.  Appellant's agent seems to have assumed either that the mortgage lien followed and attached to the proceeds of the prunes, or that there was a binding agreement between Gates, Toy and this agent, apart from the mortgage lien, to pay the proceeds to the company.

There was evidence supporting the findings of the court which in effect were that the lien was lost and that there was no such agreement.

Appellant contends that even if Buck was given the right to sell the crop, this fact did not amount to a consent on the part of the company that the sale should release its lien; that Buck's right was nothing more than that of a first mortgagee and as he is making no claim to the fund, the company, as second mortgagee, is entitled to the surplus remaining after Buck was paid.   But this view does not meet the claim of Tom Quong, the attaching creditor, who served his garnishment

after the company had lost its lien. When the attachment was served the defendant company had no more claim upon the fruit than any general creditor.

Taking, then, the most favorable view of the Buck-Toy agreement that appellant had a lien by virtue of its mortgage, the findings that the lien was lost before the attachment was levied, support the judgment, and it is therefore affirmed.

Buckles, J., and McLaughlin, J., concurred.