G. W. SHELLHAMMER, Appellant, v. N. N. JONES *et al.*, Appellees.

1. **Chattel Mortgages**: SUFFICIENCY OF DESCRIPTION. Where the description of property in a chattel mortgage was, "One bay stallion with small white star in forehead, two years old, past; one chestnut sorrel stallion with white tail and mane, with small white star in forehead, seven years old," and the instrument described the mortgagor as a resident of P. county, and had a provision against removing the property from that county, but stipulated that, in case of a foreclosure, the sale should be at a place named in C. county; and it also contained a statement that the mortgagor was the owner of the property; and it appeared that the property was on the farm of the mortgagor, in P. county, and was the only property he had answering to said description, *held*, that the description was sufficient to make the record of the mortgage constructive notice to subsequent purchasers.

2. **Livery Stable Keeper**: LIEN: WAIVER: REVIVAL. Where one who had the possession of certain horses had them kept in a livery stable and was indebted for their keeping when taken away by a mortgagee, by virtue of his mortgage, but the mortgagee did not then pay the stable keeper, nor take an assignment of his claim and lien, *held*, that the lien was waived, and that it was not revived by the

subsequent payment by the mortgagee, of the amount due the keeper, and the assignment of the lien to him, it not appearing that the assignment was executed pursuant to any agreement made when the horses were taken away.

*Appeal from Cass District Court.*—HON. N. W. MACY, Judge.

WEDNESDAY, FEBRUARY 1, 1893.

ACTION at law to recover the possession of specific personal property. There was a trial by the court, without the aid of a jury, and a judgment in favor of the defendants. The plaintiff appeals.—*Reversed.*

*Willard & Willard,* for appellant.

*De Lano & Meredith,* for appellees.

ROBINSON, C. J.—The plaintiff claims to be the absolute and unqualified owner of two stallions which constitute the property in controversy, by virtue of a purchase thereof made under the foreclosure of a chattel mortgage given thereon by W. S. Cloak. The defendants claim a right to the possession of the property by virtue of a second mortgage, executed by Cloak, and also by virtue of a lien to them assigned, which was acquired by a keeper of a feed and livery stable. The district court found that the defendant, J. B. McCoy, was entitled to the possession of the property, and rendered judgment against the plaintiff for costs.

I. The mortgage under which plaintiff claims was

1. CHATTEL mortgages: sufficiency of description.

executed to George McLennan on the twenty-third day of October, 1885, and was duly recorded on the next day. It was assigned to the plaintiff, and in January, 1890, was foreclosed by notice and sale, and the stallions were purchased by the plaintiff. The mortgage under which the defendants claim was executed on the twenty-fifth day

of July, 1888, to J. H. Henry; was recorded on the twenty-sixth day of July, 1889; and was assigned to J. B. McCoy in September of that year. It purported to be a first lien upon the property in controversy, and the defendants claim that McCoy purchased it without any knowledge of the McLennan mortgage. The defendant, Jones, took possession of the property, as agent of McCoy, and does not claim any personal interest therein.

The first question we are required to determine is whether the description of the property contained in the McLennan mortgage was sufficient to make the record thereof constructive notice to subsequent purchasers of the existence of the mortgage. The description is as follows: "One bay stallion with small white star in forehead, two years old, past." "One chestnut sorrel stallion with white tail and mane, with small white star in forehead, seven years old." The mortgage purports to sell to the mortgagee the property described to secure the payment of notes specified, and contains a covenant to warrant and defend the title to the property mortgaged. It describes the mortgagor as "of the county of Pottawattamie and state of Iowa," and provides that, in case of any attempt to remove the property "from said county of Pottawattamie," it shall be lawful for the mortgagee to take immediate possession of it. In case of a foreclosure sale, it was to be made at Griswold, in Cass county. The mortgage also contains a statement in words as follows: "I hereby certify that I am the owner of the said property described in this mortgage." At the time the mortgage was executed, the stallions were in the possession of the mortgagor, on his farm in Pottawattamie county. They were the only ones of the description given which he then or has since owned. We are of the opinion that the description was sufficient, and that the record of the mortgage imparted due notice to subsequent purchasers.

It is the well-established rule in this state that the description in a chattel mortgage need not be so specific and certain that the property may be identified by the description alone.    It is sufficient if it directs the mind of the inquirer to facts or evidence from which he may ascertain the property mortgaged with absolute certainty.    *Smith v. McLean,* 24 Iowa, 331; *Rowley v. Bartholemew,* 37 Iowa, 375; *Yant v. Harvey,* 55 Iowa, 422; *Wells v. Wilcox,* 68 Iowa, 709; *Rhutasel v. Stephens,* 68 Iowa, 628; *Wheeler v. Becker,* 68 Iowa, 724; *Kneller v. Kneller,* 86 Iowa, 417.    The mortgage under consideration in *Brock v. Barr,* 70 Iowa, 400, described property as "one bay horse, named Billy, ten years old last spring," and showed that the mortgagor resided in Mahaska county.    It also provided that, in case of any attempt to remove the property from that county, the mortgagee might lawfully take possession of the property.    The description was held to be sufficient, although in important respects it was less definite and certain than are the descriptions now in controversy.    The mortgage under which the plaintiff claims contains statements which pointed directly to the identical property mortgaged.    It showed that the mortgagor owned the property, and indicated that he resided in Pottawattamie county.    The property was of a kind not generally owned even by farmers, and was described acccurately, and with some minuteness of detail.    One who read the mortgage would naturally have concluded that the property would be found in the possession of the mortgagor on his farm in Pottawattamie county, and, had he looked there, he would have found and identified the property without any uncertainty, and without trouble.    A reasonably prudent man, who desired to protect himself, would have done so.

The appellees rely upon the cases of *Barrett v. Fisch,* 76 Iowa, 553; *Warner v. Wilson,* 73 Iowa, 719;

*Everett v. Brown*, 64 Iowa, 420; *Hayes v. Wilcox*, 61 Iowa, 732; *Muir v. Blake*, 57 Iowa, 662; and *Adams v. Bank*, 53 Iowa, 491. But an examination of those cases will show that none of the mortgages therein considered contained all the means of identification which are given by the mortgage in controversy, nor an equivalent for them. Items of description may be of little value separately considered, and yet together identify the property to which they refer beyond question.

II. On the sixth day of January, 1890, the plaintiff took possession of the horses in controversy, and of

2. LIVERY stable keeper: lien: waiver: revival.

another, included in the same mortgage, and placed them in the livery stable of Brockway & Boggs, under an agreement to pay three dollars a day for the keeping of the three.

On the eighteenth day of the month named, he settled with the keepers of the stable, and paid them all of the amount due them for keeping the horses, excepting the sum of two dollars. After he purchased the two stallions in controversy, he returned them to the stable, to be there kept, without any further agreement in regard to the price to be paid for their keeping, and has since paid nothing on account of it. On the fifth day of February, 1890, the defendants took the horses from the livery stable, under the Henry mortgage, and have since that time retained possession of them. McCoy has paid Brockway & Boggs thirty-five dollars for keeping the horses prior to the date last named. The defendants claim that they have acquired from the keepers of the livery stable a lien which entitles them to the possession of the horses until it is discharged. The division of the answer in which that lien is pleaded is in the form of an amendment, placed on file fifteen months after the original answer was filed. It alleges that the horses were taken by the defendants under the mortgage held by McCoy; that Brockway &

Boggs had a lien on them for their keeping, and refused to surrender them until it was paid; that the defendants thereupon paid their charges, and took an assignment of the lien. A demurrer to that division was filed, but appears to have been abandoned, as the record discloses no ruling upon it. The division is not in the nature of a counterclaim, and must be regarded as denied by operation of law. The record shows that McCoy paid to Brockway & Boggs thirty-five dollars for keeping the horses prior to the time they were taken by the defendants, but it is admitted the money was not paid until the day before the trial. An instrument purporting to be a receipt and assignment of the lien executed by Brockway & Boggs, was delivered at the time the money was paid; but it is not shown that it was executed pursuant to any agreement made when the horses were taken by the defendants. The only conclusion which can be drawn from the record is that the horses were taken from Brockway & Boggs without any claim of a lien on their part, and without any agreement on the part of the defendants to pay their charges. If that conclusion is warranted by the facts, and for the purposes of this appeal we must presume that it is, the lien, if one existed, was waived and lost. It could not be revived and used to defeat the plaintiff's right of possession by an agreement made after this action was commenced. We do not find it necessary to determine any question in regard to the power of the keepers of livery and feed stables to assign their liens.

For the reasons shown, the judgment of the district court is REVERSED.