LIVINGSTON AND SCHALER, Appellants, v. EMMETT HECK.

Chattel Mortgages: ALTERATION OF WRITTEN INSTRUMENT BY PAROL.
1     The rule that parol evidence is incompetent to vary the terms of a written instrument, only applies to the parties to the instrument.

Waiver of Lien: ESTOPPEL. When a mortgagee agrees that the
2     property covered by the mortgage may be sold, the purchaser takes it discharged of the lien, although he knew of the mortgage. The waiver of the lien acts as an estoppel in favor of the purchaser and no consideration is necessary to its validity.

Specific Interrogatories: REFUSAL OF. It is not error to refuse
3     certain special interrogatories where the material matters inquired about are included in those given by the court.

Evidence:  In an action to recover mortgaged cattle where the evi-
dence tended to show permission of the mortgagee to sell, it
was improper to inquire, of the mortgagor on cross-examination
if he were not living in another state under an assumed name,
but permissible to show that he had been brought back to
answer to the charge of selling mortgaged cattle, as affecting
his credibility.

*Appeal from Shelby District Court.*—HON. O. D. WHEELER,
Judge.

WEDNESDAY, MAY 20, 1903.

ACTION to recover the possession of personal property
on which the plaintiffs held a mortgage. Trial to a jury,
and a verdict and judgment for the defendant. The
plaintiffs appeal. —*Affirmed.*

*Cullison & Robinson* for appellants.

*T. R. Mockler.* and *Byers & Lockwood* for appellee.

SHERWIN, J.—On the 19th day of September, 1899, the
plaintiffs, who were then live stock dealers doing business
in South Omaha, Neb., sold to J. M. Tucker, of Shelby
county, Iowa, one hundred and twelve head of young
cattle for an agreed sum; taking his note for the larger
part of the purchase price, and, as security therefor, a
mortgage back on the cattle. This stock was delivered to
Tucker, and shipped to Harlan, Iowa, where it arrived and
was unloaded and placed in the railroad stockyards on the
20th of the same month. The next day the defendant
bargained for thirty head of cattle then in said yards and
belonging to the said Tucker, and they were delivered to
him at his farm on the day following. The plaintiffs'
mortgage was recorded after the cattle were bargained for
by the defendant, but before they were delivered to him,
and before he had paid any part of their purchase price.
It is also undisputed that the defendant had actual knowl-
edge that there was a mortgage on the cattle before he
paid for them. As we view the case, however, it is not

necessary to discuss or determine questions relating to the sufficiency of the description of the cattle given in the mortgage, or to discuss the sufficiency of the notice, actual or constructive, received by the defendant. Nor is it necessary to determine the correctness of the instructions covering these points, given or refused. It was claimed by the defendant that, when Tucker bought the stock in question of the plaintiffs, it was agreed between them that he could ship it out to Harlan and sell it without reference to their mortgage thereon. This claim was supported by the direct testimony of witnesses, and by evidence of a course of dealing between them both before and after the particular transaction in question. This line of evidence was competent. The rule that parol testimony may not be received for the purpose of varying the terms of a written contract has no application in a controversy between others than the parties to the instrument. Greenleaf on Evidence, section 279; Stephen's Digest of Evidence, 173.

The jury found specially that the plaintiffs gave Tucker permission to sell the cattle, as claimed, and knew that they were to be sold by him as soon as possible. These special findings are so supported by the evidence that we cannot disturb them; and they are decisive of the case, regardless of the effect to be given the mortgage, or any notice thereof which may have been received by the defendant. What we have said as to the competency of the testimony as to the real agreement between the plaintiff and Tucker answers the appellants' contention as to the latter part of instruction four given by the court, which told the jury that it might consider prior and subsequent transactions between the plaintiffs and Tucker as an aid to their determination of the real contract of September 19th. It is suggested in argument that, if there was a waiver of the mortgage lien, it was without consideration and of no effect. But if it was a part of the original

agreement that the cattle might be sold regardless of the mortgage, there would be a consideration for the waiver. Furthermore, no consideration is necessary where the waiver acts as an estoppel.

The court's statement of the issues was longer than was necessary, perhaps, but there is no indication that it was not fully understood by the jury.

There was no error in permitting the several amendments to the answer. The trial court may exercise a wide discretion in such matters, in the interest of justice, without interference, unless it clearly appears that such discretion has been abused.

Complaint is made because the special interrogatories asked by the plaintiffs were not given. There is nothing in this, however, for the reason that all material matter contained in those asked was covered in the twenty special questions asked by the court.

The cross-examination of Tucker, who was used by the defendant as a witness, showed that he had left Iowa soon after the sale of the cattle to the defendant, and had thereafter been living in Wyoming. The plaintiffs then asked him if he was living there under an assumed name, and if he had not been brought back to Iowa to answer to the charge of selling the mortgaged cattle in controversy. Whether or not he assumed a different name in his new home was manifestly immaterial. His answer to the other question might properly have been received, as affecting his credibility as a witness—the transactions being the same—but we will not reverse because of the ruling. If his answer had been in the affirmative, it is more than probable that it would have conveyed no new information to the jury, for if then under indictment as claimed and then in custody awaiting a criminal prosecution for the crime, it is almost certain that such facts were known to every juryman in the box.

The judgment is AFFIRMED.