PRODUCERS LIVESTOCK MARKETING ASSOCIATION, Appellant, v. JOHN MORRELL & COMPANY, Appellee.

No. 43088.

NOVEMBER 12, 1935.

REHEARING DENIED FEBRUARY 15, 1936.

J. H. Johnson, L. D. Teter, and Roberts & Roberts, for appellant.

McNett, Kuhns & Brown, for appellee.

KINTZINGER, C. J.—On December 31, 1930, Livingston Brothers, a copartnership, were engaged in buying and selling feed cattle in Marion county, Iowa. At that time they arranged to secure a loan from the National Livestock Credit Corporation

through its representative, the Texas Livestock Marketing Association, of St. Joseph, Missouri, and executed their promissory note of $13,226. to the National Livestock Credit Corporation, secured by a chattel mortgage covering the 183 head of steers then purchased. These steers were shipped to and kept on the Livingston land in Marion county, Iowa, from January until August and the latter part of October, 1931. The mortgage papers were drawn and prepared by Mr. S. T. Simpson, manager of the Texas Livestock Marketing Association, of St. Joseph, Missouri, and were indorsed by that company as guarantor. In February, 1931, the appellant succeeded to all rights and liabilities of the Texas Livestock Marketing Association, and thereafter continued its business, and acted as sole agent of the mortgagee in looking after this security and its collection.

In August, 1931, 100 head of the mortgaged steers were sold by Livingston Brothers to one Ralph Warner for $8,400, who gave his check, payable to Livingston Brothers, in payment therefor. This check was immediately indorsed to appellant in part payment of the note and mortgage. The proceeds of the check were credited upon the note and mortgage, leaving a balance of $4,960 due thereon.

In October, 1931, Livingston Brothers likewise sold and delivered the remaining 83 head of steers covered by the mortgage to the same Ralph Warner, who, on the same day, sold and delivered them to the defendant appellee. Warner paid for these cattle with his two checks drawn on the Monroe State Bank, payable to Livingston Brothers. One of the checks was for $4,960, the exact amount of the balance due on the note and mortgage. This check was indorsed by Livingston Brothers to the mortgagee and forwarded to the Producers Livestock Marketing Association, the mortgagee's agent. That company, the present appellant, after deducting an amount due them for advances and charges, deposited the check to their own account, and forwarded a draft of $4,520.81, payable to the mortgagee, in payment of the balance due upon the note and mortgage. Thereupon the mortgagee forwarded the note and mortgage to the Producers Livestock Marketing Association, appellant, marked ''canceled.''

In the meantime, the $4,960 check was returned to appellant unpaid. Thereupon the National Livestock Credit Corporation, mortgagee, assigned the note and mortgage and its cause of

action against Livingston Brothers to the appellant herein, who now brings this action for conversion against John Morrell & Company, appellee, who purchased the steers in question from Ralph Warner.

Appellee defends upon the grounds (1) that the mortgage did not describe the property or its location sufficiently to give constructive notice of mortgagee's lien upon the steers in question, and that appellee had no actual notice thereof; and (2) upon the further ground that the National Livestock Credit Corporation and its agent, the plaintiff herein, consented to the sale of said cattle by Livingston Brothers, and by their acts and conduct in so doing waived the lien of their mortgage against the cattle, and are now estopped from asserting any lien thereon.

■■■ I.   Appellant contends that the court erred in refusing to admit in evidence the Marion county recorder's record of the chattel mortgage in question, because the property or its location was not sufficiently described to impart constructive notice to third parties. It is the settled rule of law that if the property mortgaged is described in such a manner as to enable third persons, aided by inquiries which the instrument itself indicates and directs, to identify the property, the description is sufficient. The correctness of this rule has never been seriously questioned, and is well sustained by the following authorities: 5 R. C. L. 429, section 63; Smith & Co. v. McLean, 24 Iowa 322; Rhutasel v. Stephens, 68 Iowa 627, 27 N. W. 786; Wells v. Wilcox, 68 Iowa 708, 28 N. W. 29; Brock v. Barr, 70 Iowa 399, 30 N. W. 652; Kenyon v. Tramel et al., 71 Iowa 693, 28 N. W. 37; Shellhammer v. Jones, 87 Iowa 520, 54 N. W. 363; Frick v. Fritz, 115 Iowa 438, 88 N. W. 961, 91 Am. St. Rep. 165; Colean Implement Co. v. Strong, 126 Iowa 598, 102 N. W. 506; Liscomb State Sav. Bank v. Akers, 197 Iowa 706, 197 N. W. 890; Wertheimer & Degen v. Shultice, 202 Iowa 1140, 211 N. W. 568.

The mortgage described the cattle as 183 head of steers *"now in possession of the undersigned at Monroe, Iowa, county of Marion, state of Iowa,* * * * more fully described as follows:

"One hundred seventy-one (171) good to choice white face two-year-old steers. One good to choice black white face two-year-old steer. Eight medium red yearling steers. Three white face red yearling steers. All dehorned."

The mortgage also states that the mortgagor "is the abso-

lute owner of all of the above described livestock * * * and the same are now in his possession at the place above described.''

The evidence shows without dispute that these steers were the only steers of any kind upon Livingston Brothers' land in Marion county, Iowa, between the time they were placed thereon and the time they were sold. The evidence also shows that Monroe, although not in Marion county, is the mortgagors' post office address, and is located within a few miles of the Marion county line.

Without entering into a detailed discussion of the evidence, it is sufficient to say that, for the purposes of this case, it may be conceded that the chattel mortgage in question was sufficiently definite in a description of the cattle and their location, to impart constructive notice of mortgagee's lien on the steers in question, and also that the appellee had actual notice thereof. Appellee would therefore be liable for a conversion of the property unless it appears from the evidence that the mortgagee consented to the sale of said cattle and thereby waived the lien of the chattel mortgage thereon.

II. Appellant also contends that the court erred in sustaining the motion on the ground of *waiver* and estoppel, because the evidence shows without dispute that the mortgagee consented to the sale of the cattle in question, and, by so doing, waived any lien it might have thereon under the mortgage.

It is the settled rule of law that where the evidence shows without dispute that a mortgagee, through his agent and representative, consents to the sale of mortgaged property, notwithstanding the terms of the mortgage, then its acts in so doing would constitute a waiver of the mortgage lien.

The rule bearing on this question is stated in 11 Corpus Juris, p. 624, section 339, as follows:

''Where the mortgagee expressly or impliedly consents to a sale of the mortgaged property by the mortgagor, he waives his lien, and the purchaser takes the title free from the same, whether or not he knew of the existence of the mortgage, and notwithstanding his want of knowledge when he makes his purchase that such consent has been given. * * * Want of knowledge on the part of the mortgagee that a sale has been made is immaterial if he gave the mortgagor general authority to sell the mortgaged property. * * * And whether the mortgagee has

authorized a sale, or is estopped to deny the mortgagor's authority to sell, is'for the jury to determine.

"When a mortgagee's consent to a sale by the mortgagor is given on condition, the condition must be performed in order to render the consent a waiver of the mortgage lien as between the parties, or as against a purchaser who was a party to the condition or had knowledge thereof, as where consent is given on condition that the proceeds of the sale be applied on the mortgage debt, or that the mortgage debt should first be paid; but nonperformance of a condition imposed on a mortgagor will not affect the rights of a purchaser who does not participate therein, or have knowledge thereof, because an agreement to allow a mortgagor to sell and turn over the proceeds is a substitution of his personal obligation for the mortgage security."

"The mortgagee's consent to a sale of the mortgaged property may be given verbally, although the mortgage forbids sales without his written consent, and notwithstanding a sale * * * without such written consent, is, * * * a misdemeanor. * * * Authority to sell may also be implied from a covenant to account to the mortgagee for the proceeds of all sales. * * * The consent of the mortgagee to a sale by the mortgagor may be implied from the circumstances of the particular transaction or from the general course of dealing of the parties." 11 Corpus Juris, 626, section 340.

It is the settled rule of law in this state that the lien of a chattel mortgage is waived where the property is sold by and with the consent of the mortgagee. Livingston & Schaller v. Stevens, 122 Iowa 62, 94 N. W. 925; Smith v. Crawford State Bank, 99 Iowa 282, 61 N. W. 378, 68 N. W. 690; Smith v. Clark, 100 Iowa 605, 69 N. W. 1011; Burroughs v. Butler-Ryan Co., 121 Iowa 215, 96 N. W. 750; Farmer et al. v. Bank of Graettinger, 130 Iowa 469, 107 N. W. 170; Bank of Hinton v. Swan, 156 Iowa 715, 137 N. W. 1032; Hoyt v. Clemans, 167 Iowa 330, 149 N. W. 442, L. R. A. 1915C, 166; Hall v. Getty, 183 Iowa 436, 167 N. W. 86; First National Bank v. Riggle, 195 Iowa 189, 190 N. W. 143.

In Livingston v. Stevens, 122 Iowa 62, loc. cit. 64, 94 N. W. 925, this court said:

"Defendant * * * further alleged that plaintiffs by their conduct and manner of dealing, * * * waived their lien, in that

they gave him permission to sell the cattle, or that they knew he was selling them and made no objection thereto, but, on the contrary, received part of the proceeds of the sales, and thus ratified all that he did. He also pleaded an estoppel based on plaintiffs' conduct with reference to the stock. * * * Further, it is contended that, if there was any release of plaintiffs' mortgage lien, such release should have been in writing, and, in any event, * * * it must have been supported by a consideration. If the action were between the parties to the instrument, no doubt this would be the rule. But it is not. Defendant's defense is not bottomed on a release of the mortgage lien, but upon a waiver of that lien or upon an estoppel. Neither such waiver nor an estoppel requires written evidence, nor need either be supported by a consideration. A waiver may be established by circumstances surrounding the transaction or by evidence of a general course of dealing. * * * If a mortgagee consents to a sale of the property by the mortgagor, the purchaser takes title free from the lien. * * * Waiver differs from estoppel in this: that the purchaser from the mortgagor need not know, when he makes his purchase, that the mortgagee has given his consent to the sale. Stafford v. Whitcomb, 8 Allen [Mass.] 518.''

In Burroughs v. Butler-Ryan Co., 121 Iowa 215, loc. cit. 217, 96 N. W. 750, this court said:

''Plaintiff's claim is based upon an alleged conversion of property upon which he held a lien by virtue of a chattel mortgage. * * * It is elementary that there is no conversion of property where it has been acquired and used with the consent of the owner or pledgee. The brick in controversy were * * * covered by the * * * mortgage; * * * and, if he did in fact give his consent to their sale to the defendant, there was no conversion, and an action therefor could not be maintained upon the theory presented by the pleadings.''

In Hoyt v. Clemans, 167 Iowa 330, loc. cit. 333, 149 N. W. 442, 443, L. R. A. 1915C, 166, this court said:

''It is doubtless true that an unconditional consent by either a chattel mortgagee or a landlord to the sale by the owner of the property covered by their liens amounts to a waiver thereof, even though he (the owner) promises to turn the proceeds

over to the lienholders. * * * This is upon the theory that the lien does not follow the purchase price, and the mortgagor simply becomes liable on his promise to pay over the proceeds, upon which there is no lien or trust.''

In First National Bank v. Riggle, 195 Iowa 189, loc. cit. 193, 190 N. W. 143, 146, this court said:

''There are numerous cases holding that a mortgagee may consent to a sale of property upon which he has a chattel mortgage, and may so conduct himself as that the purchaser of the property itself will take the title free from the mortgage lien, and that the mortgagee will be held to have waived his lien, and to be estopped from asserting it as against such a purchaser.''

Of similar import are Farmer et al. v. Bank of Graettinger, 130 Iowa 469, 107 N. W. 170; Hall v. Getty, 183 Iowa 436, 167 N. W. 86; Smith v. Clark, 100 Iowa 605, loc. cit. 608, 69 N. W. 1011.

A determination of this question requires a further examination of the evidence. It shows without dispute that S. T. Simpson was, on December 31, 1930, and in January, 1931, the sole manager of the Texas Livestock Marketing Association, of St. Joseph, Missouri, and that in February, 1931, appellant, the Producers Livestock Marketing Association, succeeded to all the rights and liabilities of the Texas Company; S. T. Simpson continued with the Producers Livestock Marketing Association as sole manager thereof. The business of these livestock marketing associations was to assist farmers and cattle buyers in securing financial aid from the National Livestock Credit Corporation. At the time the mortgage was executed, the papers were prepared by Simpson, the manager of the Texas Marketing Company, and the Livingston note and mortgage was guaranteed by that company as an indorser. The liability of the Texas Livestock Marketing Association on its indorsement was assumed by the Producers Livestock Marketing Association, appellant herein. The appellant acted as sole agent for the National Livestock Credit Corporation in looking after the collection of the note and mortgage in question.

Appellee contends that the cattle in question were purchased for the very purpose of feeding them *for resale,* and that the mortgagee and its assignee were fully cognizant thereof, and

that by their acts and conduct they consented to the sale of the cattle by the mortgagors.

In January, 1931, after the cattle were purchased and placed on the mortgagors' feeding grounds, S. T. Simpson, the manager above referred to, in a letter to Livingston Brothers, said:

"I think we are now in shape to stay with you on your cattle *until the opportune time arrives to market them.*"

Mr. Simpson also testifies:

"Of course, I expected to have this Livingston note paid *from the proceeds of the sale of these cattle.*"

In a letter written January 28, 1931, to Mr. Clete Jordan, the head cattle buyer of the appellee, Morrell & Company, Simpson said:

"We are interested in one hundred and eighty-three steers in the hands of Livingston Brothers, Monroe, Iowa. These cattle have been up there relatively a short while. They were bought in Kansas City  * * * Since these cattle are under chattel to the National Livestock Credit Corporation, *which we represent, it will be necessary for all of the returns from these cattle to be forwarded to us as agents.*"

In reply to this letter on February 2, 1931, Mr. Jordan said:

"I note what you say about a bunch of cattle with Livingston Brothers, Monroe, Iowa.

"I am well acquainted with these boys and have done a lot of business with them, and they are among the best feeders in this part of the country. They are good, straight, honest fellows, and whatever they agreed to do I would nearly guarantee you they will do it. * * * No doubt they will carry these cattle until up in the summer sometime before they sell them, and *if we buy them I will send you the proceeds for them.* They are one bunch of cattle you need not worry anything about, as I know they are all right and you will get your money *when they are sold.*"

Again, on June 19, 1931, Mr. Simpson wrote appellee as follows:

"This is to advise that *all proceeds from the sale to you by*

*Livingston Brothers, * * * should be remitted to the National Livestock Credit Coporation, National Stock Yards, Illinois.*

[Signed]    Producers    Livestock Marketing Association.

"STS."

In answer thereto, appellee wrote the Producers Livestock Marketing Association, appellant, as follows:

"June 22, 1931.

"We beg to acknowledge receipt of your letter of June 19, advising *that all proceeds from the sale of cattle made to us by Livingston Brothers * * * should be remitted to the National* Credit Corporation, National Stock Yards, Illinois. This will have our attention.

"[Signed]    John Morrell & Company."

In August, 1931, Livingston Brothers sold 100 head of the 183 steers in question to one Ralph Warner, and received his check of $8,400 in payment therefor. This check was payable to Livingston Brothers, and indorsed by them to the order of "Natl. Livestock Credit Corp., S. T. Simpson, Mgr. So. St. Joseph, Mo.," and was sent to appellant, who represented the mortgagee, at St. Joseph, Missouri. This check was then indorsed by Simpson and forwarded to the mortgagee for a credit on the note, and on August 12, 1931, was deposited and cashed by them through the First National Bank of St. Louis. The receipt of this Warner check for $8,400 was acknowledged by S. T. Simpson, manager, who, in a letter to Livingston Bros., said:

"We acknowledge receipt of check of Ralph Warner for $8,400 *covering sale of your cattle*. This is forwarded to the National Livestock Credit Corporation to be applied on your note.

"*Let me suggest that in the future you have duplicate copies made of your account of sales in order that we may have one for our files.* Also, that in making remittances hereafter you show trucking and any commission on your account of sales, rather than writing it in the letter. Think also it would be better to remit by draft rather than by check.

"We trust the rest of your cattle are doing well and I am

sure if you are taking as good care of them as I think you are, *they undoubtedly will do better for you than this lot did."*

The receipt of the Warner check of $8,400 in payment of the 100 head of cattle was acknowledged by Simpson for the National Livestock Credit Corporation without any objection, and tended to show consent and ratification of the sale to Ralph Warner of the 100 head of steers referred to.

Thereafter, on October 26, 1931, Livingston Brothers, in a similar manner, sold the remaining 83 head of steers covered by the chattel mortgage *to the same Ralph Warner,* taking his two checks in payment therefor, one of which was for the sum of $4,960, being the exact amount of the balance due upon mortgagee's note and mortgage. This check was likewise payable to Livingston Brothers, and by them indorsed, "Pay to the order of Producers Livestock Marketing Asso., So. St. Joseph, Mo., S. T. Simpson, Mgr."

Appellant deposited this check in their bank at St. Joseph, Missouri, and, after making some deductions for advances and charges due them, sent a draft of $4,520.81 to the National Livestock Credit Corporation in payment of the balance due on the note and mortgage.

Appellant made no objection to the sale of these 183 head of cattle to Ralph Warner or to the receipt of his checks in payment therefor. There is no evidence in this record tending to show that the appellant made any objection to the sale of these cattle by Livingston Brothers, to any one contrary to the terms of the mortgage.

Other evidence introduced also tends to show without question that the mortgagee and appellant fully expected the mortgagors to sell these cattle when they were ready for market *and remit the proceeds to the Producers Livestock Marketing Association,* the appellant, in satisfaction of their note.

All dealings relating to the note and mortgage in question were transacted with Simpson, the general manager of the Producers Livestock Marketing Association, appellant herein. That company had guaranteed payment of this note and was liable thereon. The record in this case shows without dispute that appellant, in addition to being an indorser and liable on the note in question, was the sole and exclusive agent of the mortgagee, with full power to act in all matters pertaining to the security

in question and the collection thereof, and that its acts and knowledge on behalf of the principal are binding upon the mortgagee. Pitsinowsky v. Beardsley, Hill & Co., 37 Iowa 9; Peterson v. Reaping Machine Co., 97 Iowa 148, 66 N. W. 96, 59 Am. St. Rep. 399; McClelland v. Saul, 113 Iowa 208, 84 N. W. 1034, 86 Am. St. Rep. 370; Parsons Co. v. Mallinger, 122 Iowa 703, 98 N. W. 580; First Nat. Bank v. Dutcher, 128 Iowa 413, 104 N. W. 497, 1 L. R. A. (N. S.) 142.

All the evidence introduced in this case leads to but one indisputable conclusion, and that is that appellant had full faith and confidence in the integrity of Livingston Brothers and relied upon them to remit the proceeds of the cattle sold by them immediately. It also leads to the indisputable conclusion that the mortgagee, through its agent in charge of the collection of said account, consented to the sale of said cattle when they were ready for market.

After a full consideration of all the evidence introduced, we are constrained to hold that the lien of plaintiff's mortgage was waived by the acts and conduct of the mortgagee, through its agent, in consenting to and permitting the sale of the cattle in question in the manner disclosed by the evidence.

It is therefore our conclusion that the lien of appellee's mortgage was waived, and that the judgment of the lower court is correct, and the same is hereby affirmed.—Affirmed.

PARSONS, HAMILTON, ANDERSON, MITCHELL, ALBERT, DONEGAN, POWERS, and RICHARDS, JJ., concur.