311 F.2d 477
 UNITED STATES of America, Appellant,
v.
S. Herbert HANSEN and Harry Summers, partners, d/b/a Hansen
and Summers, Appellee.
UNITED STATES of America, Appellant,
v.
Raymond MERK, d/b/a Merk Grain and Feed Company, Appellee.
UNITED STATES of America, Appellant,
v.
Theodore R. ANDERSEN, Appellee.
 Nos. 17113-17115.
 United States Court of Appeals Eighth Circuit.
 Jan. 3, 1963.
 
 Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D.C., made argument for appellant and Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Washington, D.C., Donald A. Wine, U.S. Atty., Des Moines, Iowa, and Jerry C. Straus, Atty., Dept. of Justice, Washington, D.C., were with him on the brief.
 L. K. Madsen, Audubon, Iowa, and Dale D. Levis, Audubon, Iowa, made argument for appellees and filed brief.
 Before JOHNSEN, Chief Judge and VAN OOSTERHOUT and MATTHES, Circuit judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 United States of America has appealed from judgments entered against it upon three complaints filed in three actions wherein it sought damages for conversion of hogs and corn subject to a valid chattel mortgage running to Farmers Home Administration of the Department of Agriculture (FHA). Defendants had purchased corn and hogs from the mortgagor. The defense urged in each case is that the FHA had waived its mortgage lien as to the property sold by consenting to the sale. These three cases involve common questions of law and fact. They were consolidated and tried to the court without a jury. The court upheld the defendants' contention that the mortgagee had waived its lien by consenting to the sale of the mortgaged chattels and dismissed each of the complaints. The facts and the legal basis for the judgments entered against the Government appear in Judge Stephenson's opinion reported in 203 F.Supp. 326.
 
 
 2
 Judge Stephenson made a finding of fact that the mortgagor was authorized by the FHA County Supervisor to sell the mortgaged corn and hogs here in controversy. The controlling Iowa law is set out in his opinion, as follows:
 
 
 3
 'It is clear that under the Iowa Law the plaintiff waived its mortgage lien. In Producers Livestock Marketing Ass'n v. John Morrell & Co., 1935, 220 Iowa 948, 951, 263 N.W. 242, 244, the Supreme Court said: 'It is the settled rule of law that, where the evidence shows without dispute that a mortgagee, through his agent and representative, consents to the sale of mortgaged property, notwithstanding the terms of the mortgage, then its acts in so doing would constitute a waiver of the mortgage line.'
 
 
 4
 'The fact that the mortgagor did not account to the mortgagee for the proceeds does not effect the waiver of lien under the Iowa law. Producers Livestock Marketing Ass'n v. John Morrell & Co., supra. See also, Hoyt v. Clemans 1914, 167 Iowa 330, 149 N.W. 442, L.R.A. 1915C, 166.' 203 F.Supp. 328.
 
 The Government, in its brief, concedes:
 
 5
 'In view of the district court's finding, which we do not attack on appeal as being clearly erroneous, that the FHA County Supervisor consented to the sale of the mortgaged chattels, it is similarly not a matter of dispute that, under Iowa law, the acts of the County Supervisor amounted to a waiver of the mortgage lien.'[1]
 
 
 6
 The Government rests its appeals upon its contention that the FHA County Supervisor had no authority to waive the mortgage lien upon the property sold to the defendants and that hence his attempt to do so is without legal effect.
 
 
 7
 The Government's brief deals with the County Supervisor's right to waive the lien. We consider the decisive issue to be whether the County Supervisor had a right to consent to the sale of the mortgaged property. The questions of consent and waiver are rather closely related, but conceivably something more might be required to execute a formal waiver than a consent to sale.
 
 
 8
 Rather extensive regulations relating to FHA are found in 6 C.F.R. Chapter 3. Mortgaged chattels are classified as basic security and normal farm income security. 6 C.F.R. 371.5. The Government concedes that the property here involved is normal farm income security. Regulation provisions for disposing of normal farm income security are considerably more liberal than those relating to basic securities. The mortgage liens cover practically all of the mortgagor's property. The regulations appear to contemplate that some of the proceeds of crops and livestock raised for marketing must be made available to the farmers for payment of operating and living expenses. 6 C.F.R. 371.5(b) provides in part:
 
 
 9
 'County Supervisors are authorized to release normal farm income security when the property has been sold for not less than its fair market value and the proceeds are used in accordance with the requirements in this paragraph, * * *'
 
 
 10
 The Government in each of its complaints asserts the right to recover the sale price which it alleges to be the reasonable market value of the items sold. The sales were at the usual market places for the commodities involved. It appears without substantial dispute that the corn and hogs were sold for their fair market value.
 
 
 11
 Normally, the proceeds of a sale are not available until the subject matter of the sale has been delivered and the sale has been completed. The proceeds can not be used or applied before they are received.
 
 
 12
 The trial court in its opinion sets forth some of the pertinent regulations, and then states: 'The above portions of the regulations are sufficient to point out that the County Supervisor had discretion to permit the mortgagor to sell mortgaged property.' We agree with such conclusion. It would appear that the regulations place a large degree of discretion in the County Supervisor in determining what normal farm income property may be sold and the purposes for which the mortgagor may use the proceeds. The County Supervisor, among other things, may permit the use of the proceeds for payment of necessary farm and home expenses. 371.5(c) authorizes the County Supervisor to redelegage his authority to release security property to certain subordinates upon a determination that the subordinate 'has had sufficient training and experience to exercise the authority properly.' The Government concedes that the County Supervisor has a broad discretion in representing the Government in the mortgage transactions and that it is not necessary for him to obtain authority from any superior to release normal farm security property or to permit the use of the proceeds for any of the broad purposes authorized by the regulations.
 
 
 13
 Our examination of the regulations quoted by the trial court and the regulations in their entirety satisfied us that the court properly concluded that the County Supervisor had authority to consent to the sale of the mortgaged property.
 
 
 14
 The trial court in its opinion relied in part upon 6 C.F.R. 300.2(1), which authorizes the County Supervisor to 'execute, make, and deliver * * * partial and full releases and satisfactions of security * * *, waivers, * * * evidence of consent, and other instruments or documents.' The Government argues that this section authorizes only formal written releases or waivers and has no effect in the present situation. We do not believe that 300.2(1) when read in the light of the statutes and the regulations as a whole limits the County Supervisor's authority to the giving of written releases or waivers. 6 C.F.R. 371.6(b) provides for partial release forms, but states:
 
 
 15
 'Such form need not be prepared in any case unless requested by a borrower or by an interested third party.'
 
 
 16
 Moreover, the interpretation as made by the trial court is in accord with well-established administrative practice. The court found it to be common practice to handle waiver or partial release of security by consent to sell and that formal waiver or partial release forms are rarely used. Under Iowa law, consent to sale may be oral and need not be reduced to writing. Producers Livestock Marketing Ass'n v. John Morrell & Co., 220 Iowa 948, 263 N.W. 242; Livingston & Schaller v. Stevens, 122 Iowa 62, 94 N.W. 925.
 
 
 17
 The Government additionally contends that 6 C.F.R. 300.2 (1961 Supp.) gives the County Supervisor no added authority with respect to releases, since 6 C.F.R. 300.5, which is a part of the order containing 300.2, provides that it in no way revokes or modifies prior orders or regulations, and hence a pre-existing regulation such as 371.5 is in no way superseded or modified by 300.2. We have heretofore upheld the trial court's interpretation of the regulations as a whole, of which 371.5[2] is a part, and upheld the court's determination that the County Supervisor had authority to consent to the sales here involved.
 
 
 18
 As we read the trial court's opinion, the court took the position that his determination that the FHA County Supervisor acted within the scope of his authority in consenting to the sales is dispositive of the case. We agree. Hence, the court committed no error in failing to make a finding on whether the proceeds were disbursed in a manner authorized by the regulations. Where the sale of mortgaged property is made with the consent of a person authorized to give such consent, any failure of the mortgagor to live up to an agreement he made relating to accounting for the proceeds does not affect the waiver of the lien. 'This is upon the theory that the lien does not follow the purchase, price, and the mortgagor simply becomes liable on his promise to pay over the proceeds, upon which there is no lien or trust.' Producers Livestock Marketing Ass'n v. John Morrell & Co., supra; See 14 C.J.S. Chattel Morgages 262.
 
 
 19
 The Government has failed to establish that the court erred in its determination that the Government has waived its lien upon the morgaged property sold by the mortgagor to the defendants.
 
 
 20
 The judgments appealed from are affirmed.
 
 
 
 [1]
 In the trial court, the Government urged that the question of whether the acts of the County Supervisor constituted a waiver must be determined by reference to federal law. The trial court rejected such contention upon the basis of United States v. Kramel, 8 Cir., 234 F.2d 577. The Government states, 'We do not press the choice of law point in this brief.'
 
 
 [2]
 The Government in its brief states that at the time of the events here pertinent, 6 C.F.R. 371.4, cited and relied upon by the trial court had been superseded by 6 C.F.R. 371.5 (1960 Supp.); that the erroneous citation was perhaps induced by the Government's reliance in the trial court upon the outmoded section. The Government then states that 371.4, cited by the trial court, is not materially different from 6 C.F.R. 371.5 (1960 Supp.)