UNITED STATES of America,
Appellee,

v.

**E. W. SAVAGE & SON, INC.,**
**Appellant.**

UNITED STATES of America,
Appellee,

v.

**ADAMS DOUGHERTY LIVESTOCK**
**COMMISSION COMPANY,**
**Appellant.**

UNITED STATES of America,
Appellee,

v.

**OLSEN–FRANKMAN COMMISSION**
**COMPANY, Appellant.**

Nos. 72-1429-72-1431.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1973.

Decided March 13, 1973.

Rehearing and Rehearing En Banc

Denied April 12, 1973.

David V. Vrooman, Sioux Falls, S. D., for appellant.

David Gienapp, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before LAY, HEANEY and STE-PHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is a combined appeal by three livestock commission firms from an en-

try of directed verdicts and judgments for conversion of livestock owned by a third-party defendant, Robert W. Shields, not a party to this appeal. The livestock in issue were subject to a Farmers Home administration mortgage executed by Shields. In directing the verdicts, the trial court held that under South Dakota law [1] defendants were agents of Shields, the original debtor, and personally liable for assisting him in the alleged conversion. The trial court's memorandum decision is reported at 343 F.Supp. 123 (D.S.D.1972).

On May 6, 1968, Shields borrowed $26,000 from F.H.A. As evidence thereof, a promissory note and accompanying security agreement were executed. The note called for repayment of the loan on June 1, 1969. Pursuant to the execution of this note, a financial statement was properly filed with the register of deeds. In accordance with F.H.A. procedure, a farm and home plan was prepared.[2] The security agreement listed 127 head of mixed cattle, including the proceeds to be derived therefrom, which were subsequently purchased by Shields between July 17 and July 31, 1968. Thereafter, a second agreement covering the same loan was executed dated August 6, 1968. A financing statement covering the August 6, 1968 agreement was also filed.

On or about June 14, 1968, Shields was instructed by one Robert Kennedy, the local F.H.A. District Supervisor, that he was to dispose of the cattle on or about June 1, 1969; that checks in payment for the secured property were to be made jointly payable, adding F.H.A. as a payee; that if any sale were made varying from the terms of the agreement, prior F.H.A. approval would be

required; and that Shields was to account to the F.H.A. county office for any proceeds before they were expended.

On August 8, 1968, two days after giving the cattle as security, Shields made an unauthorized sale of 12 head of the mortgaged cattle to Canton Livestock Sales Company. On August 12, 1968, F.H.A. approved this sale by accepting the proceeds which were in the form of a check that included F.H.A. as payee.

Between August 27, 1968 and March 4, 1969, Shields made the following unauthorized sales to defendants: (1) to defendant Savage, 34 head at a total cost of $3,835.89; (2) to defendant Olsen-Frankman, 48 head totalling $9,498.00; (3) and 37 head to defendant Adams-Dougherty Livestock Commission, totalling $7,886.98. None of the proceeds of the sales paid to Shields were ever received by F.H.A.

At the close of all the evidence, the trial court orally expressed the view that there was no issue of fact to be determined by the jury and therefore directed a verdict in favor of the Government. In so doing the Court observed that the most that could be argued was that F.H.A. in directing the debtor to include F.H.A. as joint payee when livestock was sold was that this constituted a conditional waiver which was not complied with by Shields, and therefore as a matter of law F.H.A. was entitled to a directed verdict in its favor.[3]

■ Appellants now contend that the evidence shows as a matter of law that F.H.A. gave express and/or conditional consent to the debtor to sell the cattle covered by the security and therefore cannot recover, or in the alternative,

1. See United States v. Kramel, 234 F.2d 577 (8th Cir. 1956), holding that state law controls in actions by the United States to enforce its rights under F.H.A. farm mortgages. But see, United States v. Hext, 444 F.2d 804, 807-808 (5th Cir. 1971), holding that a uniform federal interpretation is required.

2. See, 7 CFR § 1871.7 (1972). A "farm and home" plan, or Form FHA 431-2 is basically an information statement which reflects information relative to the borrower's operations.

3. The Court reserved the right to file a memorandum opinion setting out with more clarity its views, which it did at 343 F.Supp. 123.

that the issue of consent involves a fact question which should have been submitted to the jury. Appellee urges that the trial court correctly determined as a matter of law that the evidence shows that no express, implied or conditional consent regarding the sale of the livestock involved had been given Shields and therefore the United States was entitled to the judgment rendered. Appellee further contends that the livestock in question was "basic" farm security and under applicable law the security was not released by F.H.A. county officials and further, had they done so, they were without authority to bind the Government. We find the latter contentions correct and dispositive of this appeal.

Under the terms of the security agreement, the incumbered property was "basic security" as distinguished from "normal farm income security." These terms are defined in the Code of Federal Regulations as follows:

"(a) Basic security consists of all equipment serving as security for Farmers Home Administration loans. It also consists of all foundation herds and flocks, including replacements, which serve as a basis for the farming operation outlined in the Farm and Home Plan . . . .

\* \* \* \* \* \*

"(b) Normal farm income security consists of all security property not considered as basic security. This will include crops, livestock, livestock products, and poultry covered by Farmers Home Administration liens which are sold in the usual course of operating the farm business.[4]

7 C.F.R. § 1871.5 (1967) states that the authority to release security for F.H.A. loans secured by basic security is different than that for normal farm income security, and that "County Supervisors are authorized hereby to release basic farm security when the property has been sold or exchanged for its fair market value, and the proceeds are used for . . .," certain enumerated purposes.[5]

In connection with this provision, only two basic conditions were imposed by F.H.A. as a prerequisite to receiving the consent of the county supervisor—that the checks would be made jointly payable to Shields and F.H.A., and that Shields would come to the county office and account for the proceeds before they were expended.[6] Thus, when these two

---

4. 7 C.F.R. § 1871.5 (1967). 31 Fed.Reg. 14213–14 (Nov. 1966), effective during the period of this agreement. The section is substantially the same as 7 C.F.R. § 1871.8 (1972).

5. "(1) To pay on the debts owed to the Farmers Home Administration which are secured by liens on the property sold.

(2) To purchase from the proceeds of the sale, or to acquire through exchange, property more suitable to the borrower's needs, subject to the following conditions: The new property, together with any proceeds applied to the indebtedness, will have security value to the Farmers Home Administration at least equal to that of the lien formerly held by the Farmers Home Administration on the old property. The new property must be made subject to a lien in favor of the Farmers Home Administration by the execution of a new security instrument or by operation of the "replacement" or "after acquired property" clauses in lien instruments.

(3) To make payments to other creditors having liens on the property sold which are superior to the liens of the Farmers Home Administration provided any amount remaining after payments are made to the other creditors is used in accordance with the provisions of subparagraphs (1) and (2) of this paragraph.

(4) To pay costs required to preserve or realize on security property because of an emergency or catastrophe when the need for funds cannot be met through a Farmers Home Administration loan in sufficient time to prevent the borrower and the Farmers Home Administration from suffering a substantial loss."

6. *Compare*, Quaker Oats Co. v. McKibben, 230 F.2d 652 (9th Cir. 1956). The Ninth Circuit Court of Appeals affirmed the trial court which held that the mortgagee had by implied agreement, given the mortgagors permission to sell directly to third parties and without written consent so long as any check drawn in payment was

conditions were followed in carrying out the sale to Canton Livestock on August 8, 1968, despite the sale initially being unauthorized, F.H.A. approved the transaction in order for Shields to purchase substitute or replacement cattle pursuant to 7 C.F.R. § 1871.5(a)(2), *supra*.[7] Such approval by F.H.A. does not operate as consent for Shields to sell free of the mortgage. Instead, it operates as a "mere offer of the mortgagee to release the mortgage upon certain conditions being met." Rapid City Pro. Cr. Ass'n v. Transamerica Ins. Co., 184 N.W.2d 49, 51 (S.D.1971); *see also*, Cassidy Commission Company v. United States, 387 F.2d 875, 879–880 (10th Cir. 1967). In the matter at hand, the required conditions were not complied with and there was no release of the Government's liens.

Defendants suggest that in construing these regulations, we held in United States v. Hansen, 311 F.2d 477 (8th Cir. 1963), that the County Supervisor may give consent to such a sale, and where consent is given the lien is extinguished. The *Hansen* decision dealt with "normal farm income security." No "basic security" was involved. Therein, the F.H.A. County Supervisor authorized the mortgagor to sell the normal farm income security. The question was whether the County Supervisor had been vested with authority to waive the mortgage lien in that instance. The trial court made a finding of fact that F.H.A. had consented to the sale in question, and further that the County Supervisor had the authority to do so. In affirming this Court noted that "Regulation provisions for disposing of normal farm income security are considerably more liberal than those relating to basic securities." *Hansen, supra*, 311 F.2d at 479. *Hansen* is distinguishable in that it dealt with a different type of security.

 Assuming arguendo that local F.H.A. officials did waive the liens in-

made jointly payable to mortgagors and mortgagee. Unlike the instant cause, payment by the purchasers of the secured

volved in this case, such action being contrary to the published regulation would not be binding on the Government. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); United States v. Ulvedal, 372 F.2d 31, 35 (C.A.8 1967).

Affirmed.

property in issue was by check made payable to both mortgagors and mortgagee.

