**LISBON BANK AND TRUST COMPANY,**
Appellant,

v.

Richard **MURRAY**, Appellee,

v.

Glenn **MEIER** and Joan Meier, Appellees
and Defendants to Cross-Petition.

No. 55484.

Supreme Court of Iowa.

March 28, 1973.

Rehearing Denied May 17, 1973.

R. B. Wolfe, Mount Vernon, for appellant.

McLaughlin & Beckmann, Anamosa, for appellee Richard Murray.

Heard ·before MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves a problem under the Uniform Commercial Code arising out of a sale of cattle. Plaintiff Lisbon Bank and Trust Company loaned defendants to cross-petition (Glenn Meier and Joan Meier) $6620.00 on January 15, 1969, to purchase 48 Holstein heifers and received a duly perfected security interest in the cattle. On March 25, 1969, Glenn Meier sold 12 of the heifers to defendant Richard Murray for $2428.80. Subsequently the Meiers defaulted on their note and filed · bankruptcy. The bank seeks in this action to collect $2428.80 from Murray on the theory he purchased the cattle subject to the bank's lien. Trial court found the sale was made free of the lien and dismissed the bank's petition. We affirm.

■ The determinative issue is whether the sale was authorized by the bank. Section 554.9306(2), The Code, provides:

"Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale * * * by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

The Iowa Code commentators state this section was adopted from § 9–306 of the 1962 official text of the Uniform Commercial Code and compare this subsection with previous Iowa law:

"Prior Iowa law was in accord that the lien of the secured party continued in the collateral after a sale thereof, Waters v. Cass County Bank, 65 Iowa 234, 21 N.W. 582 (1884), although the mortgagee could waive his lien by agreeing to the sale, Livingston v. Heck, 122 Iowa 74, 94 N.W. 1098 (1903)." 35B Iowa Code Annotated at 414.

The commentators add that the statute departs from former law by imposing a continuing lien on sale proceeds. However, as explained in the comment, where the lienholder authorizes the sale he waives his lien on the collateral under the Uniform Commercial Code just as under prior law.

We will assume the purchase in this case was by "a person buying farm products subject to a perfected security interest from a person engaged in farming operations" within the meaning of Code § 554.-9307, under which other buyers in the ordinary course of business take free of a security interest even where the sale is unauthorized. See Uniform Commercial Code Comment, Iowa Code Annotated, at 431.

■ Trial court made a finding of fact that Glenn Meier had authority to sell the cattle. A disputed question of the debtor's authority to sell collateral is for the trier of fact to decide. Producers Livestock M. Ass'n v. John Morrell & Co., 220 Iowa 948, 951–952, 263 N.W. 242, 244 (1935); 15 Am.Jur.2d Chattel Mortgages, § 153 at 324. This was a law action tried to the court. Trial court's fact findings are binding on us if supported by substantial evidence. Rule 344(f)(1), R.C.P. Our role is to examine the record to determine if there is substantial evidence to support this crucial finding.

Sale may be authorized by the secured party "in the security agreement or otherwise." § 554.9306(2), The Code. The security agreement in this case did not authorize sale and therefore the bank cannot

be held to have waived its security interest in the collateral unless it "otherwise" consented to the sale.

There was evidence the Meiers lived on a 33 acre tract near Lisbon where they bred sows, farrowed feeder pigs, grew hay and grazed livestock. The bank started loaning Glenn Meier money on his livestock operation in January 1968. Several loans covered by security agreements were made prior to January 15, 1969. At trial the bank acknowledged a general course of dealing, notwithstanding the security agreements, permitting him to sell collateral and apply the proceeds either to substitutions or on the notes. The bank admitted Meier accordingly sold hogs and horses on several prior occasions but denied he was authorized to sell cattle. There had been only one earlier cattle loan and those cattle had evidently not been sold at the time of the loan involved in this case. There was no evidence of any communication from the bank to Glenn Meier making any distinction as to cattle.

Glenn Meier told the bank at the time of the January 15, 1969, loan some of the cattle being purchased were bred, the others would be bred, and he intended to pasture them for six to 12 months on land owned by his father in Clinton County, selling them just before they calved. He hoped to pay the loan through enhancement in their value. The bank asserted it did not learn of the March 25, 1969, sale of 12 of the heifers to Murray until after the Meiers filed bankruptcy in May 1970.

However, it was undisputed that Glenn Meier took Murray's $2428.80 check to the bank the day after the sale. His version is that he told the bank's loan officer he sold some of the cattle and was permitted to deposit the money in his checking account rather than have it applied on the note. He said he spent the money on sows which became substitute collateral. The bank records show the check was deposited in his checking account. The bank loan officer denied Meier told him of the sale and said if he had the money would have been applied on the cattle loan. It was trial court's prerogative to pass on the credibility of the witnesses.

Both Glenn Meier and Murray testified Meier told Murray of the bank's security agreement on the cattle at the time of sale and Meier assured Murray he would take care of it.

Evidence of a course of dealing has relevance in interpreting agreements under the Uniform Commercial Code. Section 554.1205(1), The Code, defines course of dealing as "a sequence of previous conduct between the parties * * * which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." It may give particular meaning to and supplement or qualify terms of an agreement. § 554.1205(3), The Code.

A leading case on establishment of authority to sell secured farm products under the Uniform Commercial Code is Clovis National Bank v. Thomas, 77 N.M. 554, 425 P.2d 726 (1967). There the security agreement expressly prohibited sale of the collateral without the prior written consent of the secured party. The court found the secured party had nevertheless as a matter of common practice permitted the debtor to make such sales without prior written consent. The secured party was held to have waived the requirement of written consent and its security interest. Clovis has been criticized for recognizing course of dealing as a basis for waiver of the requirement of written consent to sale. This is because the Uniform Commercial Code provides where express terms of an agreement and a course of dealing are inconsistent the express terms control. § 554.1205(4), The Code. See, generally, 47 Tex.L.Rev. 309, 313–314.

A different result was reached by the Nebraska Supreme Court in Garden City Production Credit Assn. v. Lannan, 186 Neb. 668, 186 N.W.2d 99 (1971). That case also involved a security agreement containing an express prohibition against sale without prior written consent. The Nebraska trial court had found waiver based on the secured party's failure despite knowledge of the sale to object to it until after the purchaser's check failed to clear.

■ We are not here confronted with a security agreement with a provision requiring written consent prior to sale, and we have a course of dealing which raises a question of fact as to the debtor's authority to sell. *Clovis* and *Garden City* each recognize, in accordance with the general rule, that a finding of authority to sell may be implied from a prior course of dealing at least in the absence of a security agreement prohibition against sale without written consent. See Livingston v. Stevens, 122 Iowa 62, 69, 94 N.W. 925, 927 (1903) ("A waiver may be established * * * by evidence of a general course of dealing between the parties"); see also 14 C.J.S. Chattel Mortgages § 262 b. at 877–879.

This principle is unaffected by a finding such as was made here that the authority to sell was conditioned upon the debtor's agreement to apply the proceeds to the debt:

> "Where the sale of mortgaged property is made with the consent of a person authorized to give such consent, any failure of the mortgagor to live up to an agreement he made relating to accounting for the proceeds does not affect the waiver of the lien." United States v. Hansen, 311 F.2d 477, 480 (8 Cir. 1963).

See also Hoyt v. Clemans, 167 Iowa 330, 333, 149 N.W. 442, 443 (1914). If the authority had been conditioned on the purchaser making payment to the secured party, it appears the lien would not have been lost. See 15 Am.Jur.2d Chattel Mortgages, § 151 at 321; annot. 97 A.L.R. 646 et seq. It was not so conditioned. And we are not here confronted with a situation where the purchaser had notice of any condition. Cf. Producers Livestock M. Ass'n v. John Morrell & Co., *supra*, 220 Iowa at 951, 263 N.W. at 244.

■ The fact the purchaser had actual notice of the security interest and was unaware it was waived does not alter the result. Waiver was between the bank and the Meiers. It was not necessary that it be communicated to the purchaser. Where sale is authorized the lien is divested and the purchaser takes the property free of it. Livingston v. Heck, 122 Iowa 74, 94 N.W. 1098 (1903); 15 Am.Jur.2d, Chattel Mortgages, § 151 at 321–322; § 554.9306(2), The Code. Waiver substitutes the personal obligation of the debtor for the collateral. Producers Livestock M. Ass'n v. John Morrell & Co., *supra*; Swift & Company v. Jamestown National Bank, 426 F.2d 1099, 1103–1104 (8 Cir. 1970).

In the present case there is substantial evidence from which the trier of fact could find the bank gave general authority to Glenn Meier to sell collateral subject to his duty to account for the proceeds. The bank acknowledges no complaint would have been made here had the proceeds been applied against the note. The bank lost because it trusted Glenn Meier to do what he had done before when he sold collateral. Murray trusted his assurance the sale was free of lien. As between the bank and Murray, the law imposes the risk of loss in these circumstances on the bank.

There is substantial evidence to support trial court's finding the bank consented to the sale. The case is affirmed.

Affirmed.