UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles M. MORELAND, et
al., Defendants,

Bobby J. Butler, Defendant-Appellant.

No. 75-2870
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1975.

Jackson M. Brown, Starkville, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before WISDOM, BELL and CLARK, Circuit Judges.

PER CURIAM:

This appeal raises the question whether the substitution of property equal in value to property which secures a government agency loan exempts the mortgagor from compliance with the applicable regulations. Bobby J. Butler appeals from a judgment in favor of the United States entered pursuant to a directed verdict, under which he was declared liable for his part in the conversion of property securing a Farmers Home Administration (FmHA) loan. We affirm.

Charles M. Moreland obtained a loan from the FmHA in order to buy a farm and a herd of beef cattle. While this loan was outstanding, Moreland sought to recast the character of his operation from beef to dairy farming, and, subsequently, to change the breed of his dairy farming, and, subsequently, to change the breed of his dairy cattle from Holstein to Guernsey. The first changeover took place with the consent and under

* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y.*, 431 F.2d 409, Part I (5th Cir. 1970).

the supervision of the FmHA. The swap of breeds, although apparently known to the County Supervisor, did not follow the same procedure which included deposit of the proceeds from the sale of the original herd in an account supervised by the FmHA. To accomplish the Holstein to Guernsey switch, Moreland sold the Holsteins to Butler; Butler sold them to the other defendants. Neither party to the transaction sought supervision before or release after the sale. Moreland admittedly did not apply the proceeds from his sales to Butler to his loan account. Butler contends, however, that he is released from liability by the conduct of the County Supervisor. He offers overlapping theories in support of his position: (1) the Supervisor consented to the changeover in advance; (2) the Supervisor waived the requirements of 7 C.F.R. § 1871.5 (1970)[1]; and (3) conduct of the Supervisor, together with the equivalency in value of the old and new herds amounted to "constructive compliance" with the applicable regulations and was sufficient to release the secured property from the FmHA's lien.

▪ We do not accept any of these theories. All three run counter to the procedures ˚prescribed in the Code of Federal Regulations and the facts adduced in the court below. The testimony of County Supervisor Boggan indicates that, prior to the investigation that led to the acceleration of Moreland's loan balance he knew little either of Moreland's plan to switch to Guernsey cattle or of the extent to which his plan was executed. Further, the testimony clearly demonstrates that Boggan intended at all times that the regulations be observed and understood that the regulations do not permit "consent" to a changeover to substitute for compliance with the post-transaction procedures of § 1871.5.

The provisions of § 1871.5 define the sole authority for conducting a sale or exchange involving property which secures a FmHA loan. No informal "consent" procedure is recognized. This interpretation conforms to both the letter and the spirit of the law governing FmHA mortgage transactions. *See United States v. E. W. Savage & Son, Inc.*, 475 F.2d 305 (8th Cir. 1973); *Cassidy Commission Company v. United States*, 387 F.2d 875 (10th Cir. 1967). Admittedly, the potential for confusion was created by the discussions between Moreland and Supervisor Boggan's assistant. However, Butler's own knowledge of FmHA procedures as a loanholder should have led him to take steps to assure himself either that the § 1871.5 formalities were observed as a part of the transaction or that any informality was rectified before a final change of position occurred. The post-sale release procedure in § 1871.5 is designed as a "safety valve" to prevent the hardship and waste that would result from automatic acceleration or imposition of penalties each time a transaction involving secured property takes place without supervision. FmHA is entitled, however, to demand the full assurance the section gives that its interests will be protected.

▪ The United States clearly would be entitled to pursue converted property on which it held a lien into the hands and pocketbooks of purchasers with notice. It is equally plain that where established procedures for *post hoc* relief have been undercut, the United States

---

1. "Sec. 1871.5 Releasing security property.

"(a) * * * County Supervisors are authorized hereby to release basic security when the property has been sold or exchanged for its fair market value, and the proceeds are used for one or more of the following purposes;
"(1) To pay on the debts owed to the Farmers Home Administration which are secured by liens on the property sold.
"(2) To purchase from the proceeds of the sale, or to acquire through exchange, property more suitable to the borrower's needs, subject to the following conditions; The new property, together with any proceeds applied to the indebtedness, will have security value to the Farmers Home Administration at least equal to that of the lien formerly held by the Farmers Home Administration on the old property. The new property must be made subject to a lien in favor of the Farmers Home Administration by * * * 'after acquired property' clauses in lien instruments."

remains entitled to recover the value of liened property from knowing purchasers to protect itself against the possibility of loss even though the uncertainty of repayment has been created by the selling mortgagor's noncompliance with those relief procedures.  The judgment is

Affirmed.